Kevin G. Little, SBN 149818
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, CA 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: service@kevinglittle.com

Attorneys for Plaintiffs Wickey TwoHands and Joseph Quinney, for themselves and those similarly situated

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

WICKEY TWOHANDS, individually and on behalf of all others similarly situated; and JOSEPH QUINNEY, individually and on behalf of all others similarly situated,

Plaintiff(s),

vs.

CITY OF FRESNO, a municipal corporation; STEVE ROCHA, in his individual and official capacity; H. CORONA, in his individual and official capacity; OMAR KHAN, in his individual and official capacity; DAVID PONEK, in his individual and official capacity; and DOES 1-50,

Defendant(s).

Case No.:

**CLASS ACTION**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

INDIVIDUAL CAUSES OF ACTION:
1. False Arrest (42 U.S.C. § 1983)
2. Malicious Prosecution (42 U.S.C. § 1983)
3. False Arrest (Cal. Civ. Code § 52.1)
4. Malicious Prosecution (Cal. Civ. Code § 52.1)

CLASS ACTION CAUSES OF ACTION:
5. Violation of Due Process - State Created Danger (42 U.S.C. § 1983; U.S. Const. amend. XIV)
6. Violation of Equal Protection (42 U.S.C. § 1983; U.S. Const. amend. XIV)
7. Violation of Fourth and Fifth Amendment Property Rights (42 U.S.C. § 1983)
8. Violation of Procedural Due Process (42 U.S.C. § 1983; U.S. Const. amend. XIV)
9. Discrimination Against Persons with Disabilities (42 U.S.C. § 12131 et seq., ADA Title II)
10. Violation of Rehabilitation Act (29 U.S.C. § 794)
11. State Created Danger (Cal. Const. art. I. § 7: Cal. Civ. Code § 52.1)

12. Violation of Inalienable Rights (Cal. Const. art. I, § 1; Cal. Civ. Code § 52.1)
13. Violation of Equal Protection (Cal. Const. art. I, § 7; Cal. Civ. Code § 52.1)
14. Violation of Cruel or Unusual Punishment (Cal. Const. art. I, § 17; Cal. Civ. Code § 52.1)
15. Violation of State Constitutional Property Rights (Cal. Const. art. I, § 13; Cal. Civ. Code § 52.1)
16. Violation of State Procedural Due Process (Cal. Const. art. I, §§ 7, 15; Cal. Civ. Code § 52.1)
17. Violation of Mandatory Duty (Cal. Gov't Code § 815.6; Cal. Welf. & Inst. Code § 17000)
18. Inverse Condemnation (Cal. Const. art. I, § 19)
19. Discrimination Against Persons with Disabilities (Cal. Gov't Code § 11135)
20. Violation of Disabled Persons Act (Cal. Civ. Code § 54 et seq.)
21. Violation of Health and Safety Code (Cal. Health & Safety Code § 101025)
22. Negligence
23. Waste of Public Funds (Cal. Code Civ. Proc. § 526a)
24. Declaratory Relief (28 U.S.C. § 2201)
25. Declaratory Relief (Cal. Code Civ. Proc. § 1060)
26. Injunctive Relief

DEMAND FOR JURY TRIAL

## INTRODUCTION

1. This civil rights class action challenges the City of Fresno's unconstitutional policies, practices, and ordinances that criminalize homelessness and systematically deprive unhoused individuals—particularly the elderly and disabled—of their fundamental constitutional rights. Through facially neutral but discriminatorily enforced laws, Defendants have created a regime that punishes poverty, destroys personal property without due process, and subjects vulnerable populations to arrest, harassment, and danger without providing adequate shelter alternatives or reasonable accommodations.

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

2. Plaintiffs Wickey TwoHands and Joseph Quinney bring this action on behalf of themselves and all others similarly situated to vindicate their rights under the United States and California Constitutions, federal civil rights statutes, and state law. They seek declaratory and injunctive relief to invalidate unconstitutional ordinances and practices, as well as damages for the violations they have suffered.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), the Rehabilitation Act (29 U.S.C. § 794), and the Declaratory Judgment Act (28 U.S.C. § 2201). Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to this action occurred in this District.

5. To the extent that Plaintiffs allege causes of action seeking, in whole or in part, monetary relief under state law, they have complied with the California Government Claims Act, California Government Code §§ 900 *et seq.*, by filing timely claims for damages and filing this suit within six months of the denial of those claims.

## PARTIES

Plaintiffs

6. Plaintiff WICKEY TWOHANDS is a 78-year-old individual who is a resident of Fresno County, California. At all relevant times, Mr. TwoHands has been unhoused due to the housing crisis in California and his inability to afford housing despite being employed. As an elderly person, Mr. TwoHands is entitled to special protections under state and federal law. He brings this action individually and as a

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

class representative on behalf of all unhoused persons in Fresno and on behalf of all elderly unhoused persons in Fresno.

7. Plaintiff JOSEPH QUINNEY is a 52-year-old individual who is a resident of Fresno County, California. Mr. Quinney is disabled, having extremely impaired vision that qualifies him for protection under both federal and state disability laws. He requires the use of an assistive device to walk. At all relevant times, Mr. Quinney has been unhoused. He brings this action individually and as a class representative on behalf of all unhoused persons in Fresno and on behalf of all disabled unhoused persons in Fresno.

Defendants

8. Defendant CITY OF FRESNO is a municipal corporation organized and existing under the laws of the State of California. The City of Fresno is responsible for the policies, practices, customs, and ordinances challenged in this action. The City acts through its City Council, its employees, and its agents, including the Fresno Police Department and the Homeless Assistance Response Team (HART). CITY OF FRESNO is sued under federal law based on its offending policies, customs and practices cited as the moving forces of the civil rights violations alleged herein, which are the result of the dictates, initiative, orders, instructions or mandates of the policymakers of the CITY OF FRESNO, including the Fresno City Attorney, the Fresno City Council, the Chief of Police of the Fresno Police Department, the Mayor of Fresno, the City Manager, the Director of Public Utilities, and other supervisory, policymaking personnel within the City's government structure.  CITY OF FRESNO is sued under state law for the errors, omissions, misconduct, and other wrongful or unlawful actions of its employees and agents acting within the course and scope of their employment and/or agency, consistent with California Government Code § 815.2.

9. Defendant STEVE ROCHA is a police officer employed by the City of Fresno and is sued in his individual and official capacity. Officer Rocha arrested Plaintiff TwoHands on October 14, 2024, without probable cause and has displayed long-standing animosity toward unhoused individuals.

10. Defendant H. CORONA is a police officer employed by the City of Fresno and is sued in his individual and official capacity. Officer Corona assisted in the arrest of Plaintiff TwoHands on October 14, 2024.

11. Defendant OMAR KHAN is a police officer employed by the City of Fresno and is sued in his individual and official capacity. Officer Khan arrested Plaintiff Quinney on October 16, 2024, without probable cause and has displayed long-standing animus toward unhoused individuals and advocates for the unhoused. Officer Khan also arrested Mr. Quinney in August 2019 under similar circumstances.

12. Defendant DAVID PONEK is a police officer employed by the City of Fresno and is sued in his individual and official capacity. Officer Ponek assisted in the arrest of Plaintiff Quinney on October 16, 2024.

13. DOES 1-50 are agents, employees, and officials of the City of Fresno whose identities are currently unknown to Plaintiffs but who participated in and are responsible for the violations alleged herein. Plaintiffs will seek leave to amend this Complaint to identify these Doe defendants when their identities become known.

14. At all relevant times, the individual Defendants were acting under color of state law within the meaning of 42 U.S.C. § 1983.

**CLASS ACTION ALLEGATIONS**

15. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and all others similarly situated.

16. The proposed classes are defined as follows:

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

GENERAL CLASS: All persons who are currently unhoused in the City of Fresno or who will become unhoused in the City of Fresno and who are or will be subject to enforcement of Fresno Municipal Code § 10-2101 (anti-camping ordinance), Fresno Municipal Code § 9-3104 (shopping cart ordinance), and related loitering and public nuisance ordinances, as well as related enforcement practices including encampment sweeps and property seizures.

ELDERLY SUBCLASS: All members of the General Class who are aged 60 or older.

DISABLED SUBCLASS: All members of the General Class who have one or more disabilities as defined by the Americans with Disabilities Act, the Rehabilitation Act and/or California law.

17. The classes are so numerous that joinder of all members is impracticable. According to the most recent Point in Time (PIT) count, there are approximately 5,000 unhoused individuals in Fresno, with approximately 3,000 unsheltered individuals. The elderly comprise nearly half of California's homeless population, and approximately 70% of elderly unhoused adults have concomitant disabilities. Class members are geographically dispersed throughout the City of Fresno.

18. There are questions of law and fact common to the classes, including:

a. Whether the anti-camping and loitering ordinances are unconstitutionally vague in violation of the Due Process Clause;

b. Whether Defendants enforce these facially neutral ordinances in a discriminatory manner against unhoused individuals in violation of the Equal Protection Clause;

c. Whether Defendants' policies and practices of seizing and destroying the personal property of unhoused individuals without adequate notice or opportunity to be heard violate the Fourth, Fifth, and Fourteenth Amendments;

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

d. Whether Defendants' policies and practices create state-created dangers that expose unhoused individuals to risks of harm that would not otherwise exist;

e. Whether Defendants discriminate against disabled unhoused individuals by failing to provide reasonable accommodations and modifications in violation of the ADA, Rehabilitation Act, and state disability laws;

f. Whether Defendants discriminate against elderly unhoused individuals by enforcing ordinances without regard to their special needs and vulnerabilities;

g. Whether the challenged ordinances and practices violate multiple provisions of the California Constitution, including the right to due process, property, protection against arbitrary or excessive punishment, ;

h. Whether Defendants violate their mandatory duty under California Welfare and Institutions Code § 17000 to relieve and support indigent persons;

i. Whether the City's expenditure of public funds on enforcement and criminalization rather than housing and services constitutes waste of public resources;

j. Whether declaratory and injunctive relief is warranted for any or all of the above violations.

19. Plaintiffs' claims are typical of the claims of the class members. Both named Plaintiffs have been arrested under the challenged ordinances, have had their property seized and destroyed, have been denied adequate shelter alternatives, and continue to be subject to the challenged policies and practices.

20. Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs have retained experienced civil rights counsel competent in class action litigation. Plaintiffs have no interests antagonistic to those of other class members.

21. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

22. Defendants have acted or refused to act on grounds generally applicable to the classes, making declaratory and injunctive relief appropriate with respect to the classes as a whole.

## STATEMENT OF FACTS

<u>Background: Fresno's Homelessness Crisis</u>

23.    While homelessness is a nationwide crisis, it is a particularly acute problem locally, where many advocates estimate that when the documented homeless population, the marginally or sporadically housed population, and the undocumented homeless population are counted, there are at least 10,000 persons within the confines of Fresno lacking housing. Despite the influx and availability of significant funds over the past three decades to address this crisis, Fresno's homeless crisis has only worsened, and very little of the public funds dedicated to address the issue have reached or impacted those in need in any meaningful way. Instead, funds have gone to government agencies such as law enforcement, developers, ineffectual nonprofit groups, and others who have benefited from the documented phenomenon poverty entrepreneurship. This has created an environment where there is an incentive to maintain a homeless population rather than eradicate it, and to use it for political benefit.

24. A December 2023 study concluded that Fresno had the worst homeless problem in the United States. Yet Fresno continues to target this vulnerable population with one enforcement/criminalization measure after another, under the guise of laws of facially neutral application.

25. According to the most recent Point in Time (PIT) count conducted pursuant to the U.S. Department of Housing and Urban Development's (HUD) Continuum of Care homeless assistance program, the homeless population in Fresno increased to nearly 5,000 in the past year. Specifically, the 2024 local PIT count was 4,305, which increased to 4,905 in 2025—a 13.9% increase. The number of unsheltered unhoused

**KGL**
LAW OFFICE OF KEVIN G. LITTLE
Fresno  |  San Francisco

individuals also increased significantly by 10.3%, from 2,758 to 3,042. The 2025 PIT count also shows that this area has only 55% of its homeless population housed, with nearly 3,000 people unsheltered every day.

26. Experts acknowledge that PIT counts are notoriously inaccurate and severely undercount the actual number of unhoused persons because the count occurs on a single night in January of each year and many unhoused individuals avoid being counted or are in locations not surveyed.

27. While the majority of California continuums of care showed collective decreases in unhoused populations, Fresno experienced the opposite trend—a significant increase in homelessness.

28. In California, including Fresno, two-thirds of the unhoused population is unsheltered, which is the reverse of national trends.

29. One-third of the Fresno area's homeless population is chronically homeless, meaning they have experienced homelessness for more than one year and have at least one disabling condition.

30. Adults over 50 now comprise nearly half of the homeless population in California and an even greater percentage of the newly homeless. The elderly is the fastest growing population group among the unhoused. Furthermore, many elderly unhoused adults have concomitant disabilities—approximately 70%. Even further, nineteen percent (19%) of the unhoused are survivors of domestic violence or other trauma.

<u>Insufficient Shelter and Housing Resources</u>

31. For a homeless population of approximately 5,000, there were in 2024 only 2,315 shelter beds available in Fresno. That number has decreased due to the recent closure of shelters resulting from mismanagement and financial impropriety.

32. The City recently allocated $3.3 million to keep two shelters open—one through the end of June 2026 and another through the end of 2026. Yet very little of this funding directly benefits unhoused individuals.

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

33. There is simply nowhere for the vast majority of Fresno's unhoused population to go, especially with increasing rents and decreasing availability of shelters and resources.

34. Eighty-three percent (83%) of extremely low-income households in Fresno are spending more than half of their income on housing, placing many on the verge of homelessness. Fresno does not have rent control, despite having one of the very highest cost of housing to income ratios anywhere in the country.

35. On May 22, 2025, the California Department of Housing and Community Development informed the City of Fresno that its pro-housing designation was being revoked because the City has consistently failed to meet required benchmarks for addressing local housing needs.

36. The Fresno Housing Authority stated in May 2025 that heavy federal budget cuts would cause mass displacement in the area.

37. Yet, at the same time that the City moves away from investment in longer-term housing, job training, and services that could benefit unhoused individuals, it is ramping up criminalization through facially neutral laws that are selectively enforced only against the unhoused.

38. There also is no adequate social service safety net in California or Fresno. Increasingly, unhoused individuals have limited options and are being criminalized through discriminatory and arbitrary enforcement.

The December 2025 Ordinance Amendments

39. In September 2024 the City of Fresno enacted an amended anti-camping ordinance and related ordinances that were cited as one of the most severe set of enforcement rules against the homeless passed in the aftermath of the June 2024 *Grants Pass v. Johnson* decision from the Supreme Court.  These ordinances, although facially neutral, have been enforced only against the unhoused or those perceived to be unhoused and in a punitive manner.  Through a series of numerous sweeps, the City of Fresno arrested, cited and/or prosecuted well in excess of 1,000

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  unhoused persons.  There is no indication that even a single unhoused person was

2  arrested, cited or prosecuted under these provisions.

3      40. But apparently those harsh provisions were deemed insufficient by the City

4  of Fresno. On December 4, 2025, the City of Fresno passed amendments to its

5  municipal code purportedly to "strengthen enforcement" against unhoused

6  individuals.

7      41. These amendments modified the anti-camping ordinance (FMC § 10-2101),

8  the unlawful possession and abandonment of shopping cart ordinance (FMC § 9-

9  3104), and related ordinances.   The redlined versions showing the recent

10  amendments to the prior ordinances are attached hereto and incorporated herein as

11  Exhibit A. These amendments, while facially neutral, were specifically intended to

12  target and further criminalize unhoused individuals, including disabled and elderly

13  unhoused persons.

14      42. The amended ordinances include provisions that give the City power to

15  obtain injunctions against unhoused individuals.

16      43. These laws are impermissibly vague because they criminalize "loitering"

17  and "impeding the movement of other pedestrians" without adequate definition or

18  standards.

19      44. The amended ordinances are further vague because they refer to

20  prohibition in undefined "sensitive areas."

21      45. The new December 2025 ordinances prohibit the presence of unhoused

22  individuals not just on City property but on "property where the city has access,"

23  which is also unconstitutionally vague.

24      46. The new ordinance extends prohibitions to locations where the City has an

25  easement, which is completely unknowable to ordinary citizens and therefore void for

26  vagueness.

27      47. The new December 2025 ordinance criminalizes "standing in a public place

28  in such a manner as to obstruct or interfere with the free passage of pedestrians,"

effectively treating unhoused individuals as second-class citizens who are not entitled to use sidewalks like housed residents.

48. Specifically, the new loitering prohibition states: "No person shall loiter or stand in or upon any public highway, alley, sidewalk, or crosswalk, or sensitive use, or public way, in any entrance to a public place open for pedestrian travel, or otherwise occupy any portion thereof in such a manner so as to obstruct or interfere with free passage of pedestrians."

49. Under this ordinance, homeless individuals do not qualify as "pedestrians" with equal rights to public spaces; they are relegated to second-class citizenship.

50. This law is also discriminatory against elderly and disabled individuals who have greater difficulty moving quickly for other pedestrians due to their age or physical limitations.

51. The new 2025 ordinance authorizes the City Attorney to obtain an injunction against anyone who has previously been cited or arrested under the ordinance, regardless of whether they have been found guilty in court—a blatant violation of due process.

52. The new December 2025 ordinance relieves City officials and law enforcement of the obligation to provide alternatives to fines or jail time, making such alternatives discretionary. This further increases the vagueness, arbitrariness, and discriminatory nature of enforcement.

53. The new ordinance gives the City Attorney broad authority to enforce "any order or injunction issued by a court that is intended to protect the public health and safety, enforce city codes, or safeguard the rights of residents," which is impermissibly vague and arbitrary.

54. Under this new provision, someone who has never been convicted of a crime can be found guilty of violating an injunction and face up to six months imprisonment and a $1,000 fine.

55. Each day can constitute a separate and distinct offense, meaning unhoused individuals could conceivably commit 365 misdemeanors in a single year, which is grossly disproportionate punishment.

56. The new ordinance states that these laws are "in addition to and exclusive of any existing remedies or prohibitions," compounding the punishment for mere existence in public space.

57. The new amendments also prohibit "storing or placing of material that may be used for shelter or bedding," which is arbitrary, capricious, and subject to selective and discriminatory enforcement. Practically anything a person may possess—from a cardboard box to a duffel bag to a pillow to a jacket—could be used for shelter or bedding.

Discriminatory Enforcement Practices

58. Although these ordinances are facially neutral, statistics and observational evidence demonstrate that they are enforced exclusively or primarily against persons who are or are perceived to be unhoused.

59. Enforcement is concentrated in areas where unhoused individuals congregate rather than being applied evenhandedly throughout the City.

60. Housed individuals are not arrested or cited for sitting, lying, or standing on sidewalks, but unhoused individuals engaging in identical conduct are targeted for enforcement.

61. People are arrested who are not even camping and who are not even homeless, but who are perceived as such, including those who associate with or advocate for unhoused individuals.

62. A recent report by Catalyst California documents that law enforcement in Fresno enforces laws in a biased manner, particularly against persons of color and marginalized groups. The challenged ordinances facilitate and exacerbate this discriminatory enforcement pattern.

63. The ordinances are enforced without regard to whether individuals have anywhere else to go, without regard to the insufficient shelter capacity, and without regard to special needs of elderly and disabled individuals.

<u>Property Seizure and Destruction</u>

64. The Fresno Police Department, including the Homeless Assistance Response Team (HART), routinely arrests unhoused individuals, either individually or en masse during encampment sweeps, without taking adequate steps to preserve their property.

65. The belongings of unhoused individuals are typically treated as trash without reasonable or careful inspection and without confirmation from the owner.

66. Property that is seized and destroyed includes personal necessities, identification documents, items of sentimental value, medication, keys to storage units, memorabilia, assistive devices, tools, bicycles, phones, wallets, clothing, and other important and difficult-to-replace items.

67. The deprivation of such property prevents people from obtaining work, obtaining housing, collecting benefits, and meeting other basic needs.

68. Service animals and companion animals of unhoused individuals who are arrested are typically released to wander or taken to shelters, depriving unhoused individuals of valued companions and sources of personal and emotional support.

69. Advocates for unhoused individuals have witnessed and documented many encampment sweeps and contacts between officers and unhoused persons. Invariably, persons are deprived of their property without any investigation regarding whether the items destroyed and taken are trash or valuable personal belongings.

70. Individuals are often told to leave with whatever little they can quickly gather and carry, and they are not given reasonable time to pack up and move their belongings.

71. Law enforcement in Fresno, including the HART team, coarsely and forcefully throws away people's belongings during sweeps.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

72. The property destruction occurs even when individuals are not arrested. People are simply moved from one location to another, with the same consequence whether they are arrested, cited, or merely "moved along."

73. These practices create ongoing uncertainty and instability for unhoused individuals, who live in fear of losing their possessions each day.

Impact on Elderly and Disabled Individuals

74. The City enforces these ordinances against persons regardless of their disabled or elderly status, despite the increased risks and burdens such enforcement creates for vulnerable populations.

75. The City does not take into account the special needs of elderly or disabled individuals in enforcing its ordinances.

76. Elderly and disabled individuals are required to move within very short timeframes, even when they are physically unable to do so and without regard to their relatively lesser capacity.

77. The greater burden placed on elderly individuals from being required to continually move, from being denied rest, and from being subject to arrest is disregarded by the City.

78. While sleep is a bodily function essential to every living being, it is particularly important for elderly individuals. The ordinances make no accommodation for those who have greater needs for rest and who are less able to remain standing or moving.

79. These laws disable elderly and disabled individuals by forcing them to move even during oppressive Fresno summers, where temperatures routinely exceed 100 degrees Fahrenheit.

80. The laws make no accommodations for people who need assistive devices, support animals, or other means of support for disabilities.

81. The ordinances are based on an erroneous presumption that everyone on the street needs drug or alcohol treatment, which is absolutely false. The homeless

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

1    population is diverse, and many unhoused individuals are neither drug addicts nor

2    alcoholics.

3        82.    The criminalization of homelessness has driven many unhoused

4    individuals into hiding, which creates greater dangers for disabled, elderly, mentally

5    ill, and trauma survivors who predominate the unhoused population.

6        <u>Lack of Meaningful Alternatives</u>

7        83. At the time unhoused individuals are arrested or cited, they are not offered

8    adequate housing or shelter alternatives.

9        84. When alternatives are offered, they typically consist only of generalized

10   drug or alcohol rehabilitation programs, which are inappropriate for individuals who

11   do not have substance abuse issues.

12       85. The City does not conduct individualized assessments of what services or

13   resources each person needs.

14       86. Given the severe shortage of shelter beds relative to the unhoused

15   population, most individuals have no place to go even if they wish to comply with the

16   ordinances.

17       <u>Waste of Public Funds</u>

18       87. Despite hundreds of millions, if not billions, of dollars being spent

19   ostensibly to address homelessness locally in the past three decades, the unhoused

20   population in Fresno continues to swell to record highs.

21       88. This represents "poverty pimping" because funds go to organizations,

22   service providers, law enforcement, and first responders, but very little results in

23   meaningful change in the day-to-day lives of unhoused individuals or in greater

24   resources being delivered to them.

25       89. People in the business of homelessness, including government agencies,

26   benefit from increased revenue while the unhoused see no improvement in their

27   circumstances.

28

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

90. The City's investigation into the abrupt closure of homeless shelters during the past year raises serious questions about where money has gone and why nothing has changed for unhoused individuals.

91. The City emphasizes criminalizing unhoused individuals through selective and discriminatory enforcement and through increased encampment sweeps, which only serve to displace people and result in loss and destruction of their property without addressing the underlying causes of homelessness.

92. At the same time, shelters are closing, the City has lost its pro-housing status with the State of California, and budget cuts at federal, state, and local levels are making fewer resources available to unhoused individuals.

93. The National Alliance to End Homelessness in its 2025 report identified the main contributors to the homelessness crisis as: lack of affordable housing, weakening of the social safety net, and lack of resources for people with health problems, disabilities, advanced age, and trauma histories.

<u>The City of Fresno's Long History of Antipathy re: the Unhoused</u>

94. The City of Fresno has a longstanding and documented hostility toward the homeless community. From the beginning of the homeless crisis in Fresno, and continuing with impunity through at least 2006, the Fresno Police Department and other city agencies engaged in the systematic harassment of the City of Fresno's homeless population, including by over-enforcing the law against them, making capricious and unnecessary arrests essentially because of the homeless statuses of persons, and issuing citations for actions that are inherent in homelessness itself (such as loitering, trespassing, going to the restroom in public, not having animals registered, littering, and the existence of other conditions that could not readily be avoided). These actions resulted in many homeless persons being subject to the mass incarceration system for petty offenses, or having warrants issued against them due to their being unable to appear in court or pay the fines imposed as a result of citations. These harassing activities had the effect of making the very existence of

many homeless persons illegal and making them subject to arrest wherever they were found. Furthermore, during these law enforcement activities, law enforcement typically would verbally abuse the homeless, including but not limited to the making of ridiculing, disparaging, and condescending commentary.

95. During this same time period, the City of Fresno would engage in arbitrary and punitive "cleanup sweep" activities that also were intended to harass the homeless. These "cleanups" resulted in the belongings of the homeless persons being treated as trash. The belongings of the homeless, including shelters, tents, clothing, pets, bedding, medicines, appliances, food, utensils, priceless items of sentimental value, being taken away – typically on very short notice or with no notice at all. These cleanup sweeps would often be initiated when the weather was particularly oppressive. During these cleanup sweeps, items of value in the possession of homeless persons would be taken and converted for personal use by City employees without any consequences from onlooking colleagues or supervisors. The officers and City officials involved in these cleanup sweeps also routinely verbally abused the homeless persons they encountered in the same manner described above.

96. In October 2006, Pamela Kincaid, Doug Deathrage, Charlene Clay, Cynthia Greene, Joanna Garcia, Randy Johnson, Sandra Thomas, Alphonso Williams and Jeanine Nelson, individually and on behalf of others similarly situated, filed an action against the City of Fresno and many of its employees, No. 1:06-cv-1445 OWW SMS. The class action lawsuit was certified to include all persons who were homeless in Fresno on or after October 17, 2003, whose personal belongings had been unlawfully taken and destroyed during a cleanup sweep. This class action lawsuit resulted in a 2008 judgment incorporating the terms of a settlement agreement, the terms of which included a multimillion-dollar payment. However, even after this settlement, the City of Fresno has continued its same harassment of the homeless, both in terms of its harassing law enforcement and cleanup sweep activities. The only significant difference was that the City of Fresno Police Department began to assign

a team of officers particularly to patrol homeless encampments. This team of officers eventually became known as the Homeless Task Force (HTF). While ostensibly having the mission of ensuring the health and welfare of City of Fresno's homeless population, the HTF continued the same harassment practices that previously were customary.

97. Despite the *Kincaid* litigation, homeless people have remained the subject of harassing and capricious over-enforcement of the law and short notice cleanup sweeps that resulted in their displacement and the destruction of their belongings, typically with little or no advance notice. For example, in October and November of 2011, the City of Fresno bulldozed a number of homeless encampments in downtown Fresno, which resulted in the destruction of property and displacement of scores of homeless persons. In the aftermath of that misconduct, 36 homeless persons filed federal lawsuits objecting to and seeking damages as a result of their property being bulldozed. The 2011 encampment bulldozings were captured in part on video and occurred in the presence of not only law enforcement and cleanup personnel, but also attorneys from a law firm retained by the City – who apparently were utilized during the cleanup sweep in an effort to legitimize the blatant misconduct that occurred. In litigation, the City of Fresno based its defense on a stated position that everything bulldozed was trash, but that assessment was made without any notice or opportunity for the owners to make their own determination. The City of Fresno has frequently utilized the designation of bulldozed property as "trash" in the aftermath of the *Kincaid* litigation in order to avoid the process that was established under the injunction issued during that case, i.e., that items identified as property be held for up to 90 days so that they could be reclaimed. The City of Fresno settled those 36 lawsuits in 2014, but as alleged herein below, continued its same destructive practices.

98. In 2013, despite two lawsuits and a valid injunction, the City of Fresno further increased its pattern of capricious arrests, citations, code enforcement and

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

other law enforcement harassment of its homeless population. This increased harassment included a policy of seizing and/or disposing of the property of homeless persons and engaging in an active campaign to displace homeless persons from campsites. Part of the City of Fresno's augmented enforcement included increasing the size and budget of the HTF.

99. In the last ten years, the City of Fresno has pressured owners of private lots to evict the homeless, or themselves face stiff penalties for their altruism. Indeed, more recently, the City of Fresno has enacted an ordinance that has the effect of penalizing property owners who allow the homeless to camp on unused private lots, since city officials can now enter these lots without permission and arbitrarily engage in "cleanup" activities billed to the owners. This ordinance also has empowered local law enforcement to engage in arbitrary cleanup sweeps even on private property.

100. While the City of Fresno has lauded itself more recently for the renovation and repurposing of old motels as shelter space, it is in reality just a continuation of the longstanding pattern of poverty pimping that has occurred for the last two decades. These shelters are only temporary living spaces and they are still woefully inadequate to house even a quarter of Fresno's homeless on any given night. These shelters also do not provide the residents with any of the essential services they need to make a meaningful change in their lives. The greatest beneficiary of the state and federal funds the City has received for this motel renovation has been the developers with whom the City of Fresno has contracted. The City of Fresno has prioritized temporary shelter space over sustainable, long-term living arrangements so that it can continue its abusive enforcement and cleanup actions, which continue even today. Moreover, these motels are resemblant of a correctional setting, since they have been staffed with abusive, corrupt, untrained security personnel, who have the effective ability to harass, abuse, deny shelter to, or even evict any homeless resident they might arbitrarily target. The City also has not been transparent about how the funds related to the motel renovations are being spent. Indeed, even the Fresno City

1    Council has expressed frustration about being left in the financial dark by the City

2    administration. Moreover, the long-term plan seems to be to transition these motels

3    to private housing, for which the homeless will pay the eventual developer/owners

4    with their meager benefits or labor, in exchange for living in a correctional-like

5    environment devoid of services.

6    Plaintiff TwoHands' Individual Experience

7    101. Plaintiff Wickey TwoHands is 78 years old and works but cannot afford

8    housing due to the housing crisis in Fresno and California.

9    102. Mr. TwoHands does not have any drug or alcohol addiction.

10   103. On October 14, 2024, Mr. TwoHands was in the vicinity of West Shields

11   and North Pleasant in Fresno when he was arrested by Officer Steve Rocha with

12   assistance from Officer H. Corona.

13   104. Officer Rocha has displayed long-standing animosity toward unhoused

14   individuals.

15   105. Mr. TwoHands was arrested for allegedly violating FMC § 10-2101

16   (sleeping, lying, sitting, or camping on public property) and FMC § 9-3104(B)

17   (unlawful possession of a shopping cart).

18   106. The arrest for violating the anti-camping ordinance was clearly invalid

19   because Mr. TwoHands was not camping but was awake and on foot at the time of

20   arrest.

21   107. The alleged violation of the shopping cart ordinance was invalid because

22   the required signage mandated by California Business and Professions Code §

23   22435.1 did not exist on the shopping cart.

24   108. There was no evidence that the alleged owner of the shopping cart, Kohl's,

25   had taken the steps necessary to invoke the shopping cart ordinance.

26   109. The signage on the shopping cart did not comply with Business and

27   Professions Code § 22435.1, which requires notification to any possessor regarding

28   the process for returning the cart, including a valid telephone number and address.

110. There was also no proof that Mr. TwoHands had removed the shopping cart from Kohl's or any other retail location.

111. There was no probable cause for Mr. TwoHands' arrest.

112. All of Mr. TwoHands' property was taken and destroyed in connection with his arrest.

113. Contrary to what was reported, Mr. TwoHands' property was not safeguarded for return to him.

114. Mr. TwoHands was not offered housing or other adequate resources at the time of his arrest.

115. Because Mr. TwoHands does not have a drug addiction, he was not eligible for drug treatment or rehabilitation, so he was simply arrested without being offered meaningful alternatives.

116. As a 78-year-old person, Mr. TwoHands was at all times entitled to protection as an elderly person, but the City and the arresting officers made no accommodations for his age.

117. Mr. TwoHands was charged on January 8, 2025, in Fresno Superior Court Case No. M25900561.

118. That case was dismissed on April 10, 2025, which was scheduled to be the first day of trial.

119. Therefore, the criminal case terminated in Mr. TwoHands' favor.

120. Mr. TwoHands remains subject to the ordinances that target unhoused individuals in Fresno and therefore has standing to bring this case on his own behalf and on behalf of those similarly situated.

121. Mr. TwoHands has standing to challenge these ordinances and the City's practices on behalf of elderly unhoused persons in Fresno.

Plaintiff Quinney's Individual Experience

122. Plaintiff Joseph Quinney is 52 years old and has been unhoused for an extended period.

123. Mr. Quinney is disabled. He has extremely impaired vision that qualifies him for protection under both federal and state disability laws.

124. Mr. Quinney requires the use of an assistive device to walk.

125. It is obvious to anyone who encounters Mr. Quinney that he is severely vision impaired.

126. On October 16, 2024, Mr. Quinney was in the vicinity of E and Mariposa Streets in downtown Fresno when he was arrested by Officer Omar Khan with assistance from Officer David Ponek.

127. Officer Khan has displayed long-standing animus toward unhoused individuals and advocates for the unhoused.

128. Mr. Quinney was arrested for allegedly violating FMC § 10-2101 (sleeping, lying, sitting, or camping on public property).

129. At the time of his arrest, Mr. Quinney was not in violation of the ordinance because he was merely guarding the belongings of another person who had been arrested. He also had his own belongings with him.

130. Officer Khan was rude in his dealings with Mr. Quinney and did not make a reasonable determination that Mr. Quinney was in fact in violation of the municipal ordinance.

131. Officer Khan made no effort to preserve any of the property that Mr. Quinney was either safeguarding or possessing.

132. Mr. Quinney's belongings, including his assistive device, were not preserved when he was arrested.

133. Contrary to what was reported, Mr. Quinney's property was not safeguarded for return to him.

134. The failure to preserve Mr. Quinney's property was part of a long-standing pattern by the Fresno Police Department of destroying the belongings of unhoused individuals without proper safeguards.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

135. The assistive device Mr. Quinney was using at the time of his arrest was a wooden stick, which may seem insignificant to others but was extremely valuable for his safety given his impaired vision.

136. Mr. Quinney was offered drug/alcohol treatment services in lieu of being arrested, but he was not offered the housing he requested.

137. Mr. Quinney was subsequently charged with violating the anti-camping ordinance as a misdemeanor in Fresno Superior Court Case No. M25900833. This misdemeanor carries a fine of up to $10,000 and up to one year in custody.

138. Mr. Quinney was also arrested on a warrant in Case No. M19926605 for violating Penal Code § 647(e) (lodging without consent of the owner). Mr. Quinney was on public property at the time of that arrest as well.

139. Case No. M19926605 was based on an August 9, 2019, incident in which Mr. Quinney was arrested in an alley near the same location as his 2024 arrest.

140. In 2019, Mr. Quinney was also arrested by Officer Khan, who likewise failed to preserve Mr. Quinney's property despite what was reported.

141. At the time of Mr. Quinney's October 2024 arrest, Fresno was in the midst of an extensive sweep following enactment of its anti-camping ordinance, which became effective September 16, 2024.

142. As a result of the deprivation of his property and the lack of regard for his disabled status, Mr. Quinney was released from the Fresno County Jail without any assistive device or means to navigate the streets safely.

143. Shortly after his release from jail, on October 19, 2024, Mr. Quinney had a serious accident in which he fell down a flight of stairs and injured his back.

144. The fall was a direct and foreseeable consequence of Defendants' failure to preserve Mr. Quinney's assistive device and failure to make accommodations for his disability.

145. Mr. Quinney spent a significant amount of time in the hospital and in a physical rehabilitation center recovering from his injuries.

1    146. Mr. Quinney continues to have physical limitations related to those

2    injuries.

3    147. Both of Mr. Quinney's criminal cases were dismissed on August 6, 2025.

4    148. Therefore, both criminal actions terminated in Mr. Quinney's favor.

5    149. Mr. Quinney continues to be unhoused and remains subject to the

6    oppressive ordinances both as they existed previously and as they were recently

7    amended on December 4, 2025.

8    150. Mr. Quinney therefore has standing to bring this lawsuit on his own

9    behalf and on behalf of those similarly situated.

10   151. Mr. Quinney has standing to assert the rights of disabled persons subject

11   to these ordinances.

### **INDIVIDUAL CAUSES OF ACTION**

12

13   **FIRST CAUSE OF ACTION**

14   False Arrest in Violation of the Fourth and Fourteenth Amendments

15   (42 U.S.C. § 1983)

16   (Individual Cause of Action - Against All Individual Defendants)

17   152. Plaintiffs incorporate by reference all preceding paragraphs as if fully set

18   forth herein.

19   153. The Fourth Amendment to the United States Constitution, applicable to

20   the states through the Fourteenth Amendment, protects individuals from

21   unreasonable searches and seizures, including arrests without probable cause.

22   154. An arrest without probable cause constitutes false arrest in violation of

23   the Fourth Amendment.

24   155. Officer Rocha arrested Plaintiff TwoHands on October 14, 2024, without

25   probable cause.

26   156. At the time of arrest, Plaintiff TwoHands was awake and on foot, not

27   engaged in camping, sleeping, lying, or sitting in violation of FMC § 10-2101.

28

**KGL**
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

157. Officer Rocha had no reasonable basis to believe that Mr. TwoHands was violating the anti-camping ordinance.

158. Regarding the shopping cart charge, the shopping cart lacked the required signage mandated by California Business and Professions Code § 22435.1 and FMC § 9-3104.

159. Officer Rocha had no evidence that Mr. TwoHands had unlawfully taken the shopping cart from any retail establishment.

160. Officer Rocha therefore lacked probable cause to arrest Mr. TwoHands for unlawful possession of a shopping cart.

161. Officer Corona participated in and assisted with the unlawful arrest of Mr. TwoHands.

162. Officer Khan arrested Plaintiff Quinney on October 16, 2024, without probable cause.

163. At the time of arrest, Plaintiff Quinney was merely guarding another person's belongings while also possessing his own belongings.

164. Officer Khan did not make a reasonable determination that Mr. Quinney was actually violating the anti-camping ordinance before arresting him.

165. Officer Khan lacked probable cause to arrest Mr. Quinney.

166. Officer Ponek participated in and assisted with the unlawful arrest of Mr. Quinney.

167. The individual Defendants acted under color of state law at all relevant times.

168. The individual Defendants acted intentionally, willfully, and with reckless disregard for Plaintiffs' constitutional rights.

169. As a direct and proximate result of the false arrests, Plaintiffs suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, and other injuries.

170. Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)

(Individual Cause of Action - Against All Individual Defendants)

171. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

172. The Fourth and Fourteenth Amendments protect individuals from malicious prosecution—the initiation and continuation of criminal proceedings without probable cause and for improper purposes.

173. Officer Rocha initiated criminal proceedings against Plaintiff TwoHands by arresting him and providing information to prosecutors leading to charges being filed in Case No. M25900561.

174. Officer Rocha knew or should have known that there was no probable cause to arrest Mr. TwoHands or to pursue criminal charges against him.

175. The criminal proceedings were initiated with malice and for the improper purpose of harassing and punishing Mr. TwoHands for being unhoused. The prosecution also continued because of false and misleading information in the reports that deprived any ethical and accurate use of prosecutorial discretion.

176. The criminal case against Mr. TwoHands was dismissed on April 10, 2025, the scheduled first day of trial, thereby terminating in Mr. TwoHands' favor.

177. Officer Corona participated in the malicious prosecution by assisting with the arrest and providing information in support of the charges.

178. Officer Khan initiated criminal proceedings against Plaintiff Quinney by arresting him and providing information to prosecutors leading to charges being filed in Case No. M25900833.

179. Officer Khan also caused Mr. Quinney to be arrested on a warrant in Case No. M19926605, which was based on Officer Khan's prior unlawful arrest of Mr. Quinney in August 2019.

180. Officer Khan knew or should have known that there was no probable cause to arrest Mr. Quinney or to pursue criminal charges against him in either case.

181. The criminal proceedings were initiated with malice and for the improper purpose of harassing and punishing Mr. Quinney for being unhoused. The prosecution also continued because of false and misleading information in the reports that deprived any ethical and accurate use of prosecutorial discretion.

182. Both criminal cases against Mr. Quinney were dismissed on August 6, 2025, thereby terminating in Mr. Quinney's favor.

183. Officer Ponek participated in the malicious prosecution by assisting with the arrest and providing information in support of the charges.

184. The individual Defendants acted under color of state law at all relevant times.

185. The individual Defendants acted intentionally, willfully, and with reckless disregard for Plaintiffs' constitutional rights.

186. As a direct and proximate result of the malicious prosecutions, Plaintiffs suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, the burden of defending against baseless criminal charges, and other injuries.

187. Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

False Arrest in Violation of the Bane Act

(Cal. Civ. Code § 52.1)

(Individual Cause of Action - Against All Defendants)

**KGL**
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

188. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

189. California Civil Code § 52.1 (the "Bane Act") provides a cause of action against anyone who interferes with or attempts to interfere with an individual's constitutional or statutory rights by threats, intimidation, or coercion.

190. The California Constitution, Article I, § 13, protects individuals from unreasonable seizures of their person.

191. The individual Defendants interfered with Plaintiffs' state constitutional rights by arresting them without probable cause.

192. The arrests constituted threats, intimidation, and coercion within the meaning of the Bane Act.

193. Officer Rocha's arrest of Mr. TwoHands was accomplished through the use of threats, intimidation, and coercion, including the threat and use of physical force and the deprivation of liberty.

194. Officer Corona participated in threatening, intimidating, and coercing Mr. TwoHands through his participation in the unlawful arrest.

195. Officer Khan's arrest of Mr. Quinney was accomplished through the use of threats, intimidation, and coercion, including the threat and use of physical force and the deprivation of liberty, and was marked by Officer Khan's rude and hostile demeanor.

196. Officer Ponek participated in threatening, intimidating, and coercing Mr. Quinney through his participation in the unlawful arrest.

197. The individual Defendants acted intentionally and with the specific intent to interfere with Plaintiffs' constitutional rights.

198. As a direct and proximate result of these violations, Plaintiffs suffered damages including physical and emotional harm, loss of liberty, humiliation, and other injuries.

199. Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**FOURTH CAUSE OF ACTION**

Malicious Prosecution in Violation of the Bane Act

(Cal. Civ. Code § 52.1)

(Individual Cause of Action - Against All Defendants)

200. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

201. The right to be free from malicious prosecution is protected by the California Constitution.

202. The individual Defendants interfered with Plaintiffs' rights to be free from malicious prosecution through threats, intimidation, and coercion.

203. Officer Rocha and Officer Corona initiated and furthered baseless criminal proceedings against Mr. TwoHands through threats, intimidation, and coercion, including the threat of continued prosecution and punishment.

204. Officer Khan and Officer Ponek initiated and furthered baseless criminal proceedings against Mr. Quinney through threats, intimidation, and coercion, including the threat of continued prosecution and punishment.

205. The individual Defendants acted intentionally and with the specific intent to interfere with Plaintiffs' constitutional rights. These prosecutions also continued because of false and misleading information in the reports that deprived any ethical and accurate use of prosecutorial discretion.

206. As a direct and proximate result of these violations, Plaintiffs suffered damages including emotional distress, loss of liberty, the burden of defending against baseless charges, and other injuries.

207. Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

## CLASS ACTION CAUSES OF ACTION

### FIFTH CAUSE OF ACTION

State-Created Danger in Violation of the Due Process Clause

(42 U.S.C. § 1983; U.S. Const. amend. XIV)

(Class Action Cause of Action - Against All Defendants)

208. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

209. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

210. The Due Process Clause of the Fourteenth Amendment prohibits state actors from creating or increasing dangers to individuals' safety.

211. The state-created danger doctrine applies when: (1) the state actors created or increased the danger to the plaintiff; (2) the plaintiff was a member of a limited and specifically identifiable group facing special dangers; (3) the state actors' conduct shocked the conscience; and (4) the state actors used their authority to create an opportunity for danger that would not otherwise have existed.

212. Defendants created and substantially increased dangers to unhoused individuals in Fresno through their policies, practices, customs, and ordinances, including:

a. Criminalizing fundamental life-sustaining activities such as sitting, lying, sleeping, and sheltering oneself when insufficient shelter alternatives exist, and in a selective, arbitrary and discriminatory manner;

b. Conducting encampment sweeps that forcibly displace individuals without providing adequate alternatives;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

c. Seizing and destroying personal property, including assistive devices, medication, identification, and other necessities;

d. Enforcing ordinances without accommodations for elderly and disabled individuals;

e. Creating a climate of constant harassment and instability that drives unhoused individuals into hiding in more dangerous locations;

f. Releasing disabled individuals like Mr. Quinney from custody without their assistive devices, directly exposing them to foreseeable danger.

213. These policies and practices expose unhoused individuals to dangers that would not otherwise exist, including:

a. Exposure to extreme heat and cold without adequate shelter;

b. Increased vulnerability to violence and victimization when forced into hiding;

c. Inability to maintain health and hygiene without stable locations or possessions;

d. Physical injuries resulting from lack of assistive devices and accommodation for disabilities;

e. Deterioration of mental and physical health from constant displacement and stress;

f. Loss of access to medical care, medication, and treatment.

214. Mr. Quinney's fall down the stairs and resulting serious injuries directly and foreseeably resulted from Defendants' seizure of his assistive device and their failure to accommodate his disability.

215. Unhoused individuals in Fresno, particularly elderly and disabled members of the class, constitute a limited and specifically identifiable group facing special dangers.

216. Defendants used their governmental authority to create these dangers through enforcement of criminal ordinances, deployment of police resources, and implementation of official policies.

217. Defendants' conduct shocks the conscience because it deliberately targets the most vulnerable populations, inflicts foreseeable harm, and persists despite knowledge of the dangers created and the lack of adequate alternatives.

218. Defendants acted with deliberate indifference to the known and obvious dangers their policies would create for class members.

219. The City of Fresno's policymaking officials established, ratified, and maintained these dangerous policies and practices.

220. The City of Fresno, through its legislative body and executive officials, enacted and enforces the ordinances that create these dangers.

221. As a direct and proximate result of Defendants' state-created dangers, class members have suffered and continue to suffer serious physical injuries, emotional distress, deterioration of health, and other damages.

222. Class members are entitled to monetary damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**

Violation of Equal Protection

(42 U.S.C. § 1983; U.S. Const. amend. XIV)

(Class Action Cause of Action - Against All Defendants)

223. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

224. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

225. The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike under the law.

226. Equal protection is violated when facially neutral laws are applied in an intentionally discriminatory manner.

227. Defendants have violated the Equal Protection Clause through intentional discrimination against unhoused individuals in the selective enforcement of facially neutral ordinances.

228. The anti-camping, loitering, and shopping cart ordinances are facially neutral but are enforced exclusively or predominantly against individuals who are or are perceived to be unhoused.

229. Housed individuals who engage in the same conduct—sitting, lying, standing, or possessing shopping carts on public property—are not arrested or cited.

230. Enforcement is concentrated in areas where unhoused individuals congregate rather than being applied evenhandedly throughout the City.

231. Statistics and documented observations demonstrate the discriminatory pattern of enforcement.

232. The selective enforcement is intentional and purposeful, designed to punish and remove unhoused individuals from public view.

233. Officers have arrested individuals who are not even homeless but are perceived as such, including advocates for unhoused individuals.

234. A recent report by Catalyst California documents that law enforcement in Fresno engages in biased enforcement, particularly against persons of color and marginalized groups, and the challenged ordinances facilitate this discriminatory pattern.

235. Unhoused individuals constitute a class of persons who can be defined and identified.

236. The discriminatory enforcement bears no rational relationship to any legitimate governmental interest.

237. Even if a rational basis existed, Defendants' actions fail intermediate and strict scrutiny because they are not narrowly tailored to serve any compelling or important governmental interest.

238. The December 2025 ordinance amendments explicitly target unhoused individuals by treating them as second-class citizens who do not have the same right as housed persons to use public sidewalks and spaces.

239. The City of Fresno's policymaking officials have maintained policies and practices that result in discriminatory enforcement.

240. The City of Fresno has enacted ordinances and maintained policies with the purpose and effect of discriminating against unhoused individuals.

241. As a direct and proximate result of these equal protection violations, class members have suffered and continue to suffer arrests, citations, property loss, harassment, and other damages.

242. Class members are entitled to compensatory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**

Violation of Fourth and Fifth Amendment Property Rights

(42 U.S.C. § 1983; U.S. Const. amends. IV, V)

(Class Action Cause of Action - Against All Defendants)

243. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

244. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

245. The Fourth Amendment protects individuals from unreasonable seizures of their property.

246. The Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the taking of property without just compensation.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

247. Defendants have established policies, practices, and customs that result in the systematic seizure and destruction of unhoused individuals' personal property without probable cause, without adequate justification, and without just compensation.

248. During arrests and encampment sweeps, officers routinely seize and destroy the personal belongings of unhoused individuals, including:

a. Clothing, bedding, and shelter materials;

b. Identification documents and personal records;

c. Medication and medical supplies;

d. Assistive devices necessary for disabled individuals;

e. Food, water, and hygiene items;

f. Tools, bicycles, and items used for work;

g. Phones, wallets, and keys;

h. Items of sentimental value including photographs and memorabilia;

i. Service animals and companion animals.

249. These seizures occur without warrants, without individualized determinations of whether items are abandoned or contraband, and without reasonable procedures to preserve property or allow owners to reclaim it.

250. The property is treated as trash and destroyed without careful inspection and without confirmation from the owner.

251. Even when individuals are told their property will be preserved, it is in fact destroyed.

252. The property destruction occurs regardless of whether individuals are arrested, cited, or merely told to move along.

253. These seizures are unreasonable under the Fourth Amendment because they are not supported by probable cause or any legitimate law enforcement purpose.

254. The destruction of property constitutes a taking without just compensation in violation of the Fifth Amendment.

255. The City of Fresno's policymaking officials have established and maintained policies that authorize and encourage these unconstitutional property seizures and destructions.

256. The City of Fresno has failed to establish adequate policies and procedures to protect the property rights of unhoused individuals.

257. As a direct and proximate result of these violations, class members have lost valuable property, have been deprived of basic necessities, and have suffered other damages.

258. Class members are entitled to compensatory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**

Violation of Procedural Due Process

(42 U.S.C. § 1983; U.S. Const. amend. XIV)

(Class Action Cause of Action - Against All Defendants)

259. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

260. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

261. The Due Process Clause of the Fourteenth Amendment requires that individuals receive adequate notice and an opportunity to be heard before being deprived of property interests.

262. Unhoused individuals have protected property interests in their personal belongings.

263. Defendants deprive unhoused individuals of their property without providing adequate notice or any meaningful opportunity to be heard.

264. During encampment sweeps and arrests, property is seized and immediately destroyed without:

a. Prior notice of the seizure;

b. An opportunity for the owner to claim the property;

c. An inventory of seized items;

d. Procedures for storage and later retrieval;

e. Notice of procedures for reclaiming property;

f. A hearing or other forum to contest the seizure or destruction.

265. Individuals are given only minutes to gather what they can carry before their remaining property is destroyed.

266. No post-deprivation procedures exist that would satisfy due process.

267. The December 2025 ordinance amendments authorize the City Attorney to obtain injunctions against individuals who have been cited or arrested but never convicted, without providing adequate notice or hearing procedures—a blatant violation of procedural due process.

268. The ordinances authorize criminal penalties including fines and imprisonment based on violation of injunctions, without adequate procedural safeguards.

269. These procedures violate the fundamental principle that individuals are entitled to notice and an opportunity to be heard before being subjected to significant governmental deprivations.

270. The City of Fresno's policymaking officials have maintained policies and practices that violate procedural due process.

271. The City of Fresno has failed to establish constitutionally adequate procedures for protection of property rights and liberty interests.

272. As a direct and proximate result of these violations, class members have been deprived of property and subjected to criminal sanctions without due process of law.

273. Class members are entitled to compensatory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**NINTH CAUSE OF ACTION**

Discrimination in Violation of the Americans with Disabilities Act

(42 U.S.C. § 12131 et seq., Title II)

(Class Action Cause of Action - Against All Defendants)

274. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

275. This cause of action is brought on behalf of the Disabled Subclass.

276. Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

277. The City of Fresno is a "public entity" within the meaning of the ADA.

278. Members of the Disabled Subclass are "qualified individuals with disabilities" within the meaning of the ADA.

279. Approximately 70% of elderly unhoused adults have disabilities, and a substantial portion of the broader unhoused population is disabled.

280. Mr. Quinney is disabled within the meaning of the ADA due to his extremely impaired vision and need for an assistive device.

281. The enforcement of Fresno's anti-camping, loitering, and related ordinances against disabled unhoused individuals, and the City's related policies and practices, constitute discrimination on the basis of disability.

282. Defendants have failed to make reasonable modifications in policies, practices, and procedures when such modifications are necessary to avoid discrimination on the basis of disability, including:

a. Failing to provide additional time for disabled individuals to relocate during encampment sweeps;

b. Failing to accommodate individuals who cannot quickly move or stand for extended periods due to mobility impairments;

c. Failing to preserve assistive devices, medication, and other disability-related items;

d. Enforcing ordinances without regard to whether disabled individuals have accessible shelter options available;

e. Failing to provide accessible alternatives to fines and incarceration;

f. Failing to assess individual needs and circumstances before enforcement.

283. The December 2025 ordinance amendments discriminate against disabled individuals by criminalizing standing or moving slowly on sidewalks ("obstruct or interfere with the free passage of pedestrians"), which disabled individuals are more likely to do due to mobility impairments.

284. Defendants' actions have disparate impacts on disabled individuals and are motivated by discriminatory animus or deliberate indifference to the rights of disabled persons.

285. Mr. Quinney's serious fall and injuries were the direct and foreseeable result of Defendants' failure to preserve his assistive device and accommodate his disability.

286. Defendants have denied disabled class members meaningful access to public spaces and services.

287. The City of Fresno's policymaking officials have failed to implement policies to ensure ADA compliance in enforcement actions against unhoused individuals.

288. The City of Fresno has failed to conduct required self-evaluations of its services, policies, and practices as they relate to disabled individuals, and has failed to make necessary modifications.

289. As a direct and proximate result of these ADA violations, disabled class members have suffered physical injuries, loss of independence, inability to access public spaces, and other damages.

290. Class members are entitled to compensatory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**TENTH CAUSE OF ACTION**

Violation of the Rehabilitation Act

(29 U.S.C. § 794, Section 504)

(Class Action Cause of Action - Against All Defendants)

291. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

292. This cause of action is brought on behalf of the Disabled Subclass.

293. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

294. The City of Fresno receives federal financial assistance for its programs and activities.

295. Members of the Disabled Subclass are qualified individuals with disabilities within the meaning of Section 504.

296. The enforcement of Fresno's ordinances against disabled unhoused individuals, and the City's related policies and practices, constitute discrimination on the basis of disability in programs and activities receiving federal financial assistance.

297. Defendants have violated Section 504 by:

a. Enforcing ordinances against disabled individuals without reasonable accommodations;

b. Failing to modify policies and practices to avoid discrimination against disabled persons;

c. Denying disabled individuals meaningful access to public spaces and services;

d. Destroying assistive devices and disability-related property;

e. Releasing disabled individuals from custody without necessary assistive devices or supports.

298. These violations are intentional and reflect deliberate indifference to the rights of disabled persons.

299. The City of Fresno's policymaking officials have failed to ensure Rehabilitation Act compliance in Police Department policies and practices.

300. As a direct and proximate result of these violations, disabled class members have suffered physical injuries, loss of independence, denial of access to public services, and other damages.

301. Class members are entitled to compensatory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

**ELEVENTH CAUSE OF ACTION**

State-Created Danger Under California Constitution

(Cal. Const. art. I, § 7; Cal. Civ. Code § 52.1)

(Class Action Cause of Action - Against All Defendants)

302. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

303. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

304. Article I, Section 7 of the California Constitution provides due process protections that are interpreted at least as broadly as the federal Due Process Clause.

305. California Civil Code § 52.1 provides a cause of action for interference with constitutional rights by threats, intimidation, or coercion.

306. For the reasons set forth in the Fifth Cause of Action, Defendants have created dangers to class members that would not otherwise exist in violation of due process principles under the California Constitution.

307. Defendants' conduct in creating these dangers was accomplished through threats, intimidation, and coercion within the meaning of Civil Code § 52.1, including threats of arrest, actual arrests, forced displacement, and destruction of property.

308. As a direct and proximate result of these violations, class members have suffered physical injuries, emotional distress, and other damages.

309. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**TWELFTH CAUSE OF ACTION**

Violation of Inalienable Rights Under California Constitution

(Cal. Const. art. I, § 1; Cal. Civ. Code § 52.1)

(Class Action Cause of Action - Against All Defendants)

310. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

311. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

312. Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

313. Defendants' policies, practices, customs, and ordinances violate class members' inalienable rights to:

**KgL**
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

a. Life and liberty by criminalizing essential life-sustaining activities and subjecting individuals to arrest and incarceration for existing in public space;

b. Acquiring, possessing, and protecting property by systematically seizing and destroying personal belongings without justification or due process;

c. Pursuing and obtaining safety by creating dangers and instability that expose class members to harm;

d. Pursuing and obtaining happiness by making it impossible for class members to maintain stability, health, or dignity.

314. These violations are accomplished through threats, intimidation, and coercion within the meaning of Civil Code § 52.1.

315. Defendants acted intentionally and with the specific intent to interfere with these constitutional rights.

316. As a direct and proximate result of these violations, class members have suffered loss of property, loss of safety, deprivation of liberty, emotional distress, and other damages.

317. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**THIRTEENTH CAUSE OF ACTION**

Violation of Equal Protection Under California Constitution

(Cal. Const. art. I, § 7; Cal. Civ. Code § 52.1)

(Class Action Cause of Action - Against All Defendants)

318. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

319. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

320. Article I, Section 7 of the California Constitution guarantees equal protection of the laws.

321. For the reasons set forth in the Sixth Cause of Action, Defendants have violated class members' rights to equal protection under the California Constitution through discriminatory enforcement of facially neutral ordinances.

322. These violations are accomplished through threats, intimidation, and coercion within the meaning of Civil Code § 52.1.

323. Defendants acted intentionally and with the specific intent to discriminate against unhoused individuals.

324. As a direct and proximate result of these violations, class members have suffered arrests, citations, harassment, property loss, and other damages.

325. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1.

**FOURTEENTH CAUSE OF ACTION**

Violation of Prohibition Against Cruel or Unusual Punishment

(Cal. Const. art. I, § 17; Cal. Civ. Code § 52.1)

(Class Action Cause of Action - Against All Defendants)

326. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

327. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

328. Article I, Section 17 of the California Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed."

329. The California prohibition on cruel or unusual punishment has been interpreted more broadly than the federal Eighth Amendment prohibition on cruel and unusual punishment.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

330. For the reasons set forth in the Eleventh Cause of Action, Defendants' criminalization of involuntary conduct and status constitutes cruel or unusual punishment under the California Constitution.

331. Additionally, the fines imposed on indigent individuals who cannot pay them constitute excessive fines in violation of Article I, Section 17.

332. The cumulative potential penalties under the December 2025 amendments—up to 365 separate misdemeanor convictions per year—constitute grossly disproportionate and cruel or unusual punishment.

333. These violations are accomplished through threats, intimidation, and coercion within the meaning of Civil Code § 52.1.

334. As a direct and proximate result of these violations, class members have suffered criminal punishment, financial penalties they cannot afford, and other damages.

335. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**FIFTEENTH CAUSE OF ACTION**

Violation of State Constitutional Property Rights

(Cal. Const. art. I, § 13; Cal. Civ. Code § 52.1)

(Class Action Cause of Action - Against All Defendants)

336. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

337. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

338. Article I, Section 13 of the California Constitution protects individuals from unreasonable searches and seizures and provides property rights protections.

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

339. For the reasons set forth in the Seventh Cause of Action, Defendants have violated class members' state constitutional property rights through systematic seizure and destruction of personal belongings.

340. These violations are accomplished through threats, intimidation, and coercion within the meaning of Civil Code § 52.1.

341. As a direct and proximate result of these violations, class members have lost valuable property and suffered other damages.

342. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1.

**SIXTEENTH CAUSE OF ACTION**

Violation of State Procedural Due Process

(Cal. Const. art. I, §§ 7, 15; Cal. Civ. Code § 52.1)

(Class Action Cause of Action - Against All Defendants)

343. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

344. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

345. Article I, Section 7 of the California Constitution guarantees due process of law.

346. Article I, Section 15 of the California Constitution provides that "[p]ersons may not be . . . deprived of life, liberty, or property without due process of law."

347. For the reasons set forth in the Eighth Cause of Action, Defendants have violated class members' state constitutional rights to procedural due process.

348. These violations are accomplished through threats, intimidation, and coercion within the meaning of Civil Code § 52.1.

349. As a direct and proximate result of these violations, class members have been deprived of property and subjected to criminal sanctions without due process.

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

350. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs pursuant to Civil Code § 52.1. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**SEVENTEENTH CAUSE OF ACTION**

Violation of Mandatory Duty

(Cal. Gov't Code § 815.6; Cal. Welf. & Inst. Code § 17000)

(Class Action Cause of Action - Against City of Fresno)

351. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

352. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass, and is asserted against Defendant City of Fresno only.

353. California Government Code § 815.6 provides that a public entity is liable for injury caused by its failure to discharge a mandatory duty imposed by statute.

354. California Welfare and Institutions Code § 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully residing therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

355. Section 17000 imposes a mandatory duty on the City of Fresno to relieve and support unhoused individuals, particularly those who are elderly, disabled, or incapacitated.

356. The City of Fresno has breached this mandatory duty by:

a. Failing to provide adequate shelter and housing for its unhoused population;

b. Failing to provide adequate support services for elderly and disabled unhoused individuals;

KgL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

c. Criminalizing homelessness rather than providing relief and support;

d. Diverting resources to law enforcement and criminalization rather than housing and services;

e. Allowing hundreds of millions of dollars in funds designated for homeless services to be wasted or misappropriated without ensuring class members receive relief.

357. The City's breach of its mandatory duty is a proximate cause of injuries suffered by class members.

358. As a direct and proximate result of the City's breach of mandatory duty, class members have suffered and continue to suffer harm from lack of shelter, lack of services, criminalization, and other damages.

359. Class members are entitled to declaratory relief, injunctive relief compelling the City to discharge its mandatory duty, and attorneys' fees and costs.

**EIGHTEENTH CAUSE OF ACTION**

Inverse Condemnation

(Cal. Const. art. I, § 19)

(Class Action Cause of Action - Against City of Fresno)

360. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

361. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass, and is asserted against Defendant City of Fresno only.

362. Article I, Section 19 of the California Constitution provides that private property may not be taken or damaged for public use without just compensation.

363. Class members have property interests in their personal belongings, including clothing, shelter materials, identification, assistive devices, tools, and other possessions.

364. The City of Fresno, through its policies and practices, has systematically taken and destroyed class members' property for a purported public use—namely, to clear public spaces and enforce municipal ordinances.

365. These takings and destructions constitute inverse condemnation because they are done pursuant to official City policy and result in permanent deprivation of property.

366. The City has provided no compensation to class members for the property taken and destroyed.

367. The California law prohibitions against systematic destruction of homeless individuals' property pursuant to municipal policy constitutes a taking requiring compensation.

368. As a direct and proximate result of the City's inverse condemnation, class members have lost valuable property without compensation.

369. Class members are entitled to just compensation for all property taken and destroyed, declaratory relief, injunctive relief, and attorneys' fees and costs. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**NINETEENTH CAUSE OF ACTION**

Discrimination Against Persons with Disabilities

(Cal. Gov't Code § 11135)

(Class Action Cause of Action - Against City of Fresno)

370. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

371. This cause of action is brought on behalf of the Disabled Subclass and is asserted against Defendant City of Fresno only.

372. California Government Code § 11135 provides that no person in California shall, on the basis of disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or

activity that is conducted, operated, or administered by the state or by any state agency, or is funded directly by the state, or receives any financial assistance from the state.

373. The City of Fresno receives state financial assistance for various programs and activities.

374. For the reasons set forth in the Ninth and Tenth Causes of Action, the City has discriminated against disabled class members in violation of Government Code § 11135.

375. As a direct and proximate result of this discrimination, disabled class members have suffered physical injuries, loss of independence, denial of access to public services, and other damages.

376. Class members are entitled to declaratory relief, injunctive relief, compensatory damages, and attorneys' fees and costs. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**TWENTIETH CAUSE OF ACTION**

Violation of the Disabled Persons Act

(Cal. Civ. Code § 54 et seq.)

(Class Action Cause of Action - Against All Defendants)

377. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

378. This cause of action is brought on behalf of the Disabled Subclass.

379. California Civil Code § 54 et seq. (the Disabled Persons Act or Unruh Civil Rights Act as applied to disability) guarantees disabled individuals full and equal access to all public accommodations and facilities.

380. Civil Code § 54.1 provides that individuals with disabilities have the same right as the general public to full and free use of public facilities, accommodations, and streets.

381. Public sidewalks, streets, parks, and other public spaces are public accommodations within the meaning of the Disabled Persons Act.

382. Defendants have denied disabled class members full and equal access to public accommodations by:

a. Enforcing anti-camping and loitering ordinances against disabled individuals without accommodations;

b. Destroying assistive devices and disability-related property;

c. Failing to provide adequate time and assistance for disabled individuals to relocate;

d. Criminalizing conduct that disabled individuals are more likely to engage in due to their disabilities, such as sitting, lying, or moving slowly on sidewalks.

383. Defendants have acted intentionally, willfully, and with reckless disregard for the rights of disabled individuals.

384. As a direct and proximate result of these violations, disabled class members have suffered physical injuries, loss of independence, denial of access to public spaces, and other damages.

385. Pursuant to Civil Code § 54.3, class members are entitled to statutory damages of up to three times actual damages (but in no case less than $4,000), declaratory relief, injunctive relief, and attorneys' fees and costs. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**TWENTY-FIRST CAUSE OF ACTION**

Violation of Health and Safety Code

(Cal. Health & Safety Code § 101025)

(Class Action Cause of Action - Against City of Fresno)

386. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

387. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass, and is asserted against Defendant City of Fresno only.

388. California Health and Safety Code § 101025 provides: "The governing body of each local health department shall take measures necessary for the preservation and protection of the public health in the jurisdiction, including, but not limited to, all of the following: prevention and control of disease."

389. This statute imposes a mandatory duty on the City of Fresno to take measures necessary to preserve and protect public health.

390. The City has violated this mandatory duty by:

a. Implementing policies that worsen public health outcomes for unhoused individuals, including by forcing them into hiding and less safe locations;

b. Destroying medication, hygiene items, and other health-related property;

c. Creating instability and stress that exacerbate physical and mental health conditions;

d. Failing to provide adequate health services and resources while criminalizing homelessness;

e. Exposing vulnerable populations, including elderly and disabled individuals, to heat, cold, and other health hazards without adequate shelter alternatives.

391. The City's violations of Health and Safety Code § 101025 have directly and proximately caused harm to class members' health.

392. Class members are entitled to declaratory relief, injunctive relief compelling compliance with Health and Safety Code § 101025, and attorneys' fees and costs. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**TWENTY-SECOND CAUSE OF ACTION**

Negligence

(Class Action Cause of Action - Against All Defendants)

393. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

394. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

395. Defendants owed a duty of care to class members to exercise reasonable care in their enforcement activities and to avoid creating unreasonable risks of harm.

396. Defendants breached their duty of care by:

a. Seizing and destroying property without reasonable procedures to safeguard it;

b. Enforcing ordinances without regard to the health and safety of vulnerable individuals;

c. Failing to preserve assistive devices necessary for disabled individuals' safety;

d. Releasing disabled individuals from custody without necessary assistive devices or supports;

e. Conducting encampment sweeps without adequate planning to avoid harm to residents;

f. Failing to train officers to handle encounters with elderly and disabled individuals appropriately.

397. Mr. Quinney's fall down the stairs and resulting serious injuries were directly and proximately caused by Defendants' negligent failure to preserve his assistive device.

398. Other class members have suffered and continue to suffer injuries due to Defendants' negligent conduct.

399. As a direct and proximate result of Defendants' negligence, class members have suffered physical injuries, property loss, emotional distress, and other damages.

400. Class members are entitled to compensatory damages and attorneys' fees and costs. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**TWENTY-THIRD CAUSE OF ACTION**

Waste of Public Funds

(Cal. Code Civ. Proc. § 526a)

(Class Action Cause of Action - Against City of Fresno)

401. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

402. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass, and is asserted against Defendant City of Fresno only.

403. California Code of Civil Procedure § 526a authorizes taxpayers to bring actions to prevent illegal expenditure of public funds.

404. Plaintiffs and class members are residents and taxpayers of Fresno.

405. The City of Fresno has wasted public funds by:

a. Spending hundreds of millions of dollars on homelessness-related programs and services that have produced no meaningful reduction in homelessness;

b. Allocating substantial resources to law enforcement activities, arrests, prosecutions, and incarcerations that do not address the underlying causes of homelessness;

c. Funding organizations and service providers that have failed to deliver services to unhoused individuals, with funds disappearing or being misappropriated;

d. Conducting repeated encampment sweeps that merely move individuals from place to place without providing lasting solutions;

e. Defending lawsuits resulting from unconstitutional policies rather than implementing constitutional alternatives.

KGL

LAW OFFICE OF KEVIN G. LITTLE

Fresno | San Francisco

406. Despite spending enormous sums purportedly to address homelessness, the unhoused population in Fresno has increased significantly, from 4,305 to 4,905 in just one year.

407. The expenditure of funds on criminalization and enforcement rather than housing and services represents "poverty pimping"—the funds benefit government agencies, law enforcement, organizations, and service providers rather than unhoused individuals themselves.

408. These expenditures are illegal because they do not serve any legitimate public purpose and are grossly wasteful.

409. The City is investigating the abrupt closure of homeless shelters and the disappearance of funds, demonstrating that public money has been wasted or misappropriated.

410. Plaintiffs and class members, as taxpayers, have standing to challenge this waste of public funds.

411. Class members are entitled to injunctive relief prohibiting continued waste of public funds and requiring redirection of resources to effective housing and services, declaratory relief, and attorneys' fees and costs. Plaintiffs are also entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2.

**TWENTY-FOURTH CAUSE OF ACTION**

Declaratory Relief

(28 U.S.C. § 2201)

(Class Action Cause of Action - Against All Defendants)

412. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

413. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

414. An actual controversy exists between Plaintiffs and Defendants regarding the constitutionality and legality of Fresno Municipal Code § 10-2101, Fresno Municipal Code § 9-3104, the December 2025 amendments to these ordinances, and related enforcement policies and practices.

415. Plaintiffs contend that these ordinances and practices violate the United States Constitution and federal law as alleged herein.

416. Defendants contend that the ordinances and practices are lawful.

417. A judicial declaration is necessary and appropriate to resolve this controversy.

418. Plaintiffs seek a declaration that:

a. The ordinances are unconstitutionally vague in violation of the Due Process Clause;

b. Defendants' selective enforcement of the ordinances against unhoused individuals violates the Equal Protection Clause;

c. Defendants' policies and practices of seizing and destroying property without adequate notice and opportunity to be heard violate the Fourth, Fifth, and Fourteenth Amendments;

d. Defendants' policies and practices create state-created dangers in violation of the Due Process Clause;

e. Defendants' failure to provide reasonable accommodations for disabled individuals violates the ADA and Rehabilitation Act;

f. The ordinances and enforcement practices violate other federal laws as alleged herein.

419. Class members are entitled to declaratory relief under the federal Declaratory Judgment Act.

**TWENTY-FIFTH CAUSE OF ACTION**

Declaratory Relief

(Cal. Code Civ. Proc. § 1060)

**KGL**
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

1    (Class Action Cause of Action - Against All Defendants)

2    420. Plaintiffs incorporate by reference all preceding paragraphs as if fully set

3    forth herein.

4    421. This cause of action is brought on behalf of the General Class, the Elderly

5    Subclass, and the Disabled Subclass.

6    422. An actual controversy exists between Plaintiffs and Defendants regarding

7    the constitutionality and legality of the challenged ordinances and practices under

8    California law.

9    423. Plaintiffs contend that these ordinances and practices violate the

10   California Constitution and state law as alleged herein.

11   424. Defendants contend that the ordinances and practices are lawful.

12   425. A judicial declaration is necessary and appropriate to resolve this

13   controversy.

14   426. Plaintiffs seek a declaration that:

15   a. The challenged ordinances and practices violate Article I, Sections 1, 7, 13,

16   15, 17, and 19 of the California Constitution;

17   b. Defendants have breached mandatory duties under California Welfare and

18   Institutions Code § 17000 and Health and Safety Code § 101025;

19   c. Defendants' conduct constitutes discrimination in violation of California

20   Government Code § 11135 and Civil Code § 54 et seq.;

21   d. Defendants' expenditure of funds constitutes waste under Code of Civil

22   Procedure § 526a;

23   e. The ordinances and practices violate other California laws as alleged herein.

24   427. Class members are entitled to declaratory relief under California Code of

25   Civil Procedure § 1060. Plaintiffs are also entitled to relief from the City of Fresno

26   based on the vicarious liability principles set forth in California Government Code §

27   815.2.

28

**TWENTY-SIXTH CAUSE OF ACTION**

Injunctive Relief

(Class Action Cause of Action - Against All Defendants)

428. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

429. This cause of action is brought on behalf of the General Class, the Elderly Subclass, and the Disabled Subclass.

430. Plaintiffs and class members have no adequate remedy at law for the ongoing constitutional and statutory violations alleged herein.

431. Plaintiffs and class members are suffering and will continue to suffer irreparable harm from Defendants' unlawful policies, practices, customs, and ordinances unless injunctive relief is granted.

432. The balance of hardships weighs heavily in favor of Plaintiffs and class members, who face arrest, loss of property, physical danger, and violation of fundamental rights, compared to minimal burden on Defendants to comply with constitutional and statutory requirements.

433. The public interest strongly favors protecting constitutional rights and ensuring that municipal policies comply with the law.

434. Plaintiffs seek preliminary and permanent injunctive relief including, but not limited to:

a. An order enjoining enforcement of Fresno Municipal Code § 10-2101 and related anti-camping ordinances when insufficient shelter beds are available;

b. An order enjoining enforcement of the December 2025 amendments to the anti-camping, loitering, and shopping cart ordinances;

c. An order requiring Defendants to establish constitutionally adequate procedures for notice and opportunity to be heard before seizing and destroying property;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

d. An order requiring Defendants to preserve personal property, including assistive devices, identification, medication, and other necessities;

e. An order requiring Defendants to provide reasonable accommodations and modifications for disabled and elderly class members;

f. An order prohibiting the use of injunctions against individuals who have not been convicted of violations;

g. An order requiring the City to fulfill its mandatory duties under California Welfare and Institutions Code § 17000 and Health and Safety Code § 101025;

h. An order prohibiting waste of public funds and requiring redirection of resources to effective housing and services;

i. An order requiring training of law enforcement personnel on constitutional requirements and the rights of disabled and elderly individuals;

j. An order requiring monitoring and reporting of enforcement activities to ensure compliance;

k. Such other and further injunctive relief as the Court deems just and proper.

435. Each of the preceding causes of action seeking injunctive relief incorporates this request for comprehensive injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2);

2. Appoint Plaintiffs as class representatives;

3. Appoint Plaintiffs' counsel as class counsel;

4. Declare that Fresno Municipal Code § 10-2101, Fresno Municipal Code § 9-3104, the December 2025 amendments to these ordinances, and Defendants' related policies and practices violate the U.S. Constitution and federal law as alleged herein;

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICE OF KEVIN G. LITTLE

KGL

Fresno | San Francisco

5. Declare that the challenged ordinances and practices violate the California Constitution and state law as alleged herein;

6. Issue preliminary and permanent injunctions enjoining Defendants from enforcing the challenged ordinances and engaging in the challenged practices as set forth above;

7. Award compensatory damages to Plaintiffs TwoHands and Quinney for their individual claims;

8. Award punitive damages to Plaintiffs TwoHands and Quinney against the individual Defendants for their individual claims;

9. Award compensatory damages to all class members for their federal claims seeking such relief;

10. Award statutory damages pursuant to California Civil Code § 54.3 to disabled class members;

11. Award just compensation to all class members for property taken and destroyed pursuant to the inverse condemnation claim;

12. Award Plaintiffs and class members their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52.1 and 54.3, and other applicable law;

13. Award Plaintiffs and class members their costs of suit;

14. Grant such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: December 10, 2025            LAW OFFICE OF KEVIN G. LITTLE

                                    _/s/Kevin G. Little_
                                    Kevin G. Little
                                    Attorneys for Plaintiffs
                                    Wickey TwoHands and Joseph
                                    Quinney for themselves and
                                    those similarly situated.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF