Kevin G. Little, SBN 149818
Michelle L. Tostenrude, SBN 290121
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, CA 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: service@kevinglittle.com

Attorneys for Plaintiffs Wickey TwoHands and Joseph Quinney, for themselves and those similarly situated

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| WICKEY TWOHANDS, individually and on behalf of all others similarly situated; and JOSEPH QUINNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF FRESNO, a municipal corporation; STEVE ROCHA, in his individual and official capacity; H. CORONA, in his individual and official capacity; OMAR KHAN, in his individual and official capacity; DAVID PONEK, in his individual and official capacity; and DOES 1-50,<br><br>Defendants. | Case No.: 1:25-cv-01797-KES-SKO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**DATE:   March 2, 2026**<br>**TIME:   1:30 PM**<br>**DEPT:   6, 7th floor**<br><br>Judge:   Hon. Kirk E. Sherriff<br>Dept:    6, 7th floor<br>Action Filed: December 10, 2025<br>Trial Date:   Not set. |

TO THE HONORABLE COURT:

Plaintiffs Wickey TwoHands and Joseph Quinney, for themselves and those similarly situated hereby submit this opposition to the motion to dismiss filed by Defendants CITY OF FRESNO, Police Officer STEVE ROCHA, Police Officer H. CORONA, Police Officer OMAR KHAN, and Police Officer DAVID PONEK on January 23, 2026 (DN 12).

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco

- 1 -
TITLE

Plaintiffs base their opposition on the within points and authorities, as well as any additional evidence and argument that may be presented in connection with this motion, and also the Court's file in this matter.

## I.   INTRODUCTION

Defendants seek dismissal of Plaintiffs' Ninth, Tenth, and Twenty-Second Causes of Action—alleging violations of Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (RA), and state-law negligence—as well as portions of Plaintiffs' punitive damages and attorneys' fees allegations. Their arguments ignore both the detailed factual allegations in the Complaint and controlling Ninth Circuit authority.

Defendants' motion misstates both the governing standards and Plaintiffs' actual pleading. The Ninth Circuit has squarely held that Title II of the ADA and Section 504 of the RA apply to arrests and police interactions, that municipal law-enforcement activities fall within "services, programs, or activities" of a public entity, and that receipt of federal funds brings those programs within Section 504. *See, e.g., Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014); *Hyer v. City & County of Honolulu*, 118 F.4th 1044, 1054–56 (9th Cir. 2024); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001); *Lovell v. Chandler*, 303 F.3d 1039, 1052–53 (9th Cir. 2002); *Updike v. Multnomah County*, 870 F.3d 939, 949–51 (9th Cir. 2017). The Complaint tracks those standards and pleads that disabled unhoused individuals were treated worse "by reason of" their disabilities, including through the destruction of assistive devices and refusal to reasonably modify law-enforcement practices, and also that disabled unhoused persons are denied reasonable modifications in the City's enforcement programs and that Plaintiff Quinney was foreseeably injured when officers failed to preserve his assistive device. Compl. ¶¶ 123–125, 132–146, 274–301.

The Complaint likewise alleges classic state-law negligence by individual officers and vicarious liability under California Government Code section 815.2, a theory the California Supreme Court has long recognized. *See Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209–13 (1991).

TITLE

Finally, Plaintiffs' Prayer for Relief makes clear that punitive damages are sought only against the individual defendants, not the City, and attorneys' fees are properly requested under multiple fee-shifting provisions.  Compl. ¶¶ 393–400, and Plaintiffs seek punitive damages only against the individual officers, not the City. Prayer ¶ 8.

Because Defendants' Title II and Rehabilitation Act arguments are contrary to binding Ninth Circuit precedent, and their attack on negligence, punitive damages and attorney's fees rests on mischaracterizations of California law and Plaintiffs' actual prayer for relief, their motion should be denied.

## II.    FACTUAL BACKGROUND

Plaintiffs Wickey TwoHands and Joseph Quinney are elderly and disabled unhoused individuals subjected to the City of Fresno's aggressive enforcement of anti-camping and related ordinances. Compl. ¶¶ 1–2, 6–7, 23–39, 101–121, 122–151. The Complaint alleges that the City has adopted and enforced ordinances and practices that criminalize homelessness, conduct encampment sweeps, and seize and destroy the property of unhoused people, including those who are elderly and disabled. Compl. ¶¶ 15–18, 23–39, 101–121, 122–151, 208–213.

As to Plaintiff TwoHands, a 78-year-old unhoused worker, Plaintiffs allege he was arrested by Officers Rocha and Corona for violating the anti-camping and shopping cart ordinances despite not camping and despite the absence of statutorily required cart signage, that his property was seized and destroyed, and that he received no meaningful alternatives or accommodations despite his advanced age. Compl. ¶¶ 6, 101–121.

As to Plaintiff Quinney, a 52-year-old unhoused man with severely impaired vision, the Complaint alleges that Officers Khan and Ponek arrested him during a sweep, seized and failed to preserve his belongings and assistive walking device, and that he was released from jail without any assistive device or accommodation, leading directly and foreseeably to a serious fall down a flight of stairs and lasting physical injury. Compl. ¶¶ 7, 123–125, 126–137, 131–135, 142–146.

The Complaint further alleges that the City receives federal financial assistance for its public safety and homelessness-related programs and that the challenged policies and practices are

TITLE

implemented through programs and activities funded in part with federal dollars. Compl. ¶¶ 3, 23–39, 100, 291, 294–299. Plaintiffs bring class claims on behalf of a General Class of unhoused individuals, an Elderly Subclass, and a Disabled Subclass, alleging that the City's policies and practices disparately and unlawfully burden disabled unhoused individuals by denying reasonable accommodations and exposing them to heightened risks of harm because of their disabilities. Compl. ¶¶ 15–18, 23–39, 29–30, 101–121, 122–151, 274–301, 291–301.

### III.    STANDARDS OF REVIEW

Generally, the federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002).  A pleading is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  The required "short and plain statement" must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. The Supreme Court has more recently clarified that a federal complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Even after *Twombly* and *Ashcroft*, however, a plaintiff need not plead a prima facie case in his complaint.  *Swierkiewicz*, 534 U.S. at 514–515; *see also Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) (reaffirming *Swierkiewicz*'s continuing validity). "The theory of the federal rules is that once notice-giving pleadings have been served, the parties are to conduct discovery in order to learn more about the underlying facts." *Starr v. Baca*, 652 F.3d at 1212.

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Mollett v. Netflix, Inc.*, 795F.3d

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco

1062, 1065 (9th Cir. 2015). The district court's consideration of a Rule 12(b)(6) motion to dismiss is limited to considering the allegations in the complaint. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). All of the complaint's factual allegations are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*,540 F.3d 916, 919 (9th Cir. 2008). Except as otherwise required under the limited circumstances inapplicable here, facts need only be alleged generally, and the court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).

Of course, a court considering a 12(b)(6) motion does not have "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d1049, 1056-57 (9th Cir. 2008). Legal conclusions also need not be accepted. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court also is not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice. *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d1251, 1254 (9th Cir. 2013).

Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. *See Chaset v. Fleer/Skybox Int'l*, 300F.3d 1083, 1087-1088 (9th Cir. 2002); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *See Fantasy*, 984 F.2d at 1528 (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990) (internal quotations omitted)). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

"While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

## IV.    THE ADA CLAIM (NINTH CAUSE OF ACTION) IS ADEQUATELY PLED

### A. The Ninth Circuit Has Held That Title II Applies to Arrests and Police Interactions

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. The Ninth Circuit has unequivocally held that law enforcement activities constitute "services, programs, or activities" under Title II and that officers must provide reasonable accommodations when interacting with individuals with known disabilities.

In *Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd on other grounds*, 575 U.S. 600 (2015), the Ninth Circuit held that Title II covers arrests and requires police to accommodate known disabilities unless doing so would fundamentally alter the nature of the service or pose an undue burden. The Supreme Court's reversal was limited to qualified immunity and did not disturb the Ninth Circuit's holding that Title II applies to arrests.

Most recently, in *Hyer v. City & County of Honolulu*, 118 F.4th 1044 (9th Cir. 2024), the Ninth Circuit reaffirmed this principle, emphasizing that failure to modify law enforcement practices when dealing with persons experiencing mental disabilities can constitute disability discrimination under Title II. The court held that officers' knowledge of a person's disability coupled with failure to accommodate states a plausible Title II claim. *See also Van Velzen v. City of Tempe*, 560 F. App'x 679, 681 (9th Cir. 2014) (unpublished)(recognizing Title II applies to police encounters); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (setting forth Title II elements in institutional setting).

**B. The Complaint Properly Targets the City as the "Public Entity" and Pleads Officers' Conduct as the Basis for City Liability**

The Ninth Cause of Action is expressly brought "on behalf of the Disabled Subclass" under Title II and alleges that "The City of Fresno is a public entity within the meaning of the ADA. "Compl. ¶¶ 274–279. The pleading recognizes that the City acts "through its City Council, its employees, and its agents, including the Fresno Police Department and the Homeless Assistance Response Team (HART)" and that the City is sued under state law for "errors, omissions, misconduct, and other wrongful or unlawful actions of its employees and agents acting within the course and scope of their employment and/or agency, consistent with California Government Code § 815.2." Compl. ¶ 8.

Defendants correctly note that individual officers are not independently liable for damages under Title II. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). But that is not a basis to dismiss the Ninth Cause of Action in its entirety. To the extent the caption lists "all Defendants," the proper remedy is clarification that the Title II claim is asserted against the City, with the

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco

officers' conduct pled as the basis for the City's liability—exactly what the Complaint already does. Compl. ¶ 8.

### C. Plaintiffs Allege Qualified Individuals, City "Services, Programs, or Activities," and Denial of Reasonable Modifications

Under Ninth Circuit law, a Title II plaintiff states a claim by alleging (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *O'Guinn*, 502 F.3d at 1060; *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135–36 (9th Cir. 2001).

The Complaint pleads in detail that Plaintiff Quinney and the Disabled Subclass are "qualified individuals with disabilities" within the meaning of Title II:

- Plaintiff Quinney "is disabled, having extremely impaired vision that qualifies him for protection under both federal and state disability laws. He requires the use of an assistive device to walk." Compl. ¶¶ 7, 123–124.

- "It is obvious to anyone who encounters Mr. Quinney that he is severely vision impaired." Compl. ¶ 125.

- "The assistive device Mr. Quinney was using at the time of his arrest was a wooden stick, which may seem insignificant to others but was extremely valuable for his safety given his impaired vision." Compl. ¶ 135.

The Complaint further alleges that the City operates services, programs, and activities affecting unhoused individuals through enforcement of Fresno Municipal Code §§ 10-2101 and 9-3104, encampment sweeps, and coordinated property seizures by the Fresno Police Department and HART. Compl. ¶¶ 8, 15–18, 39, 208–213, 274–281. These enforcement activities are unquestionably "services, programs, or activities of a public entity" under *Sheehan and Hyer*.

The Complaint then alleges specific failures to accommodate:

The City's enforcement "constitute[s] discrimination on the basis of disability," and Defendants "have failed to make reasonable modifications in policies, practices, and procedures when such modifications are necessary to avoid discrimination, "including:

TITLE

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

(a) Providing additional time and assistance for disabled individuals to relocate during encampment sweeps;
(b) Accommodating individuals who cannot move quickly, stand for extended periods, or navigate without assistive devices;
(c) Preserving assistive devices, medical equipment, and medication during arrests and property seizures;
(d) Offering accessible alternatives to fines and incarceration;
(e) Training officers to recognize and accommodate disabilities;
(f) Establishing accessible procedures for property retrieval.

Compl. ¶ 282(a)–(f).

These are concrete, modest operational changes—preserving a walking stick, providing notice and time to relocate, refraining from indiscriminate property destruction—that plausibly qualify as reasonable modifications under Title II at the pleading stage.

**D. The Complaint Alleges Specific Injury Flowing from Failure to Accommodate**

The Complaint alleges that Plaintiff Quinney's serious physical injuries were the direct and foreseeable result of Defendants' failure to preserve his assistive device:

- "Mr. Quinney's belongings, including his assistive device, were not preserved when he was arrested." Compl. ¶ 132.

- "As a result of the deprivation of his property and the lack of regard for his disabled status, Mr. Quinney was released from the Fresno County Jail without any assistive device or means to navigate the streets safely." Compl. ¶ 142.

- "Shortly after his release from jail, on October 19, 2024, Mr. Quinney had a serious accident in which he fell down a flight of stairs and injured his back." Compl. ¶ 143.

- "The fall was a direct and foreseeable consequence of Defendants' failure to preserve Mr. Quinney's assistive device and failure to make accommodations for his disability." Compl. ¶ 144.

- "Mr. Quinney spent a significant amount of time in the hospital and in a physical rehabilitation center recovering from his injuries. Mr. Quinney continues to have physical limitations related to those injuries." Compl. ¶¶ 145–146.

These detailed factual allegations—accepted as true on a Rule 12(b)(6) motion—easily satisfy the minimal pleading standard for a Title II claim. Disabled class members have also

TITLE

suffered "physical injuries, loss of independence, inability to access public spaces, and other damages." Compl. ¶¶ 285–289.

### E. Defendants' "Fundamental Alteration" and "No Program" Arguments Are Premature Fact Issues

Defendants' reliance on *Schulz v. Bay Area Motivate, LLC* (N.D. Cal. 2020) is misplaced. *Schulz* dismissed an ADA claim where the complaint failed to allege any specific accommodation and would have required the court to redesign an entire regional bike-share system. Here, by contrast, Plaintiffs allege specific, concrete modifications—preserving assistive devices, providing notice and time to relocate, limiting property destruction during sweeps—that are modest operational adjustments, not wholesale program redesign.

The Ninth Circuit's standard in *A.G. v. Paradise Valley Unified Sch. Dist.*, 815 F.3d 1195, 1206 (9th Cir. 2016) (cited by Defendants), makes clear that whether a particular modification would "fundamentally alter" a program is a fact-intensive inquiry inappropriate for resolution on a Rule 12(b)(6) motion. The Complaint alleges that the City already expends "hundreds of millions of dollars on homelessness-related programs and services" and devotes substantial resources to sweeps and enforcement activities while offering few meaningful accommodations or service-based alternatives. Compl. ¶¶ 23, 32, 37–38, 95–100.

On these facts, whether targeted modifications are reasonable or would fundamentally alter the enforcement program is a classic mixed question of law and fact that should be decided on a more developed record, not dismissed at the pleading stage.

Defendants also contend that City ordinances themselves are not "programs or activities." But Plaintiffs' theory is directed at the City's enforcement of those ordinances—police sweeps, arrests, property handling, and release practices—which plainly constitute "services, programs, or activities of a public entity" under Title II, as *Sheehan* and *Hyer* confirm. Compl. ¶¶ 8, 15–18, 39, 208–213, 274–281.

Under the Rule 12(b)(6) standard, these allegations are more than sufficient to state a Title II claim. The Ninth Cause of Action should not be dismissed.

### V.    THE REHABILITATION ACT CLAIM (TENTH CAUSE OF ACTION) IS PROPERLY PLED

**A.  Section 504 Applies to Police Services and Parallels Title II**

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To state a claim under § 504, a plaintiff must allege: (1) he is an individual with a disability; (2) he was excluded from participation in or denied the benefits of a program or activity; (3) the program receives federal financial assistance; and (4) the exclusion or denial was by reason of disability. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

The Ninth Circuit has held that the elements of Title II and § 504 largely overlap, and both prohibit intentional disability discrimination by public entities. *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017). Section 504 applies to arrests, police services, and other governmental activities funded with federal dollars. *Duvall*, 260 F.3d at 1135–36.

**B.  The Complaint Expressly Alleges Receipt of Federal Funds**

The Complaint alleges:

- The City receives federal funding for its programs and activities. Compl. ¶ 294.
- The City's enforcement operations, including the Fresno Police Department and HART, are conducted with federal funding. Compl. ¶¶ 8, 100, 294.

These allegations satisfy the federal funding requirement under *Lovell v. Chandler*, 303 F.3d 1039, 1052–53 (9th Cir. 2002), which holds that plaintiffs need only allege that an entity or its programs receive federal funds—they need not identify the specific grant or funding stream at the pleading stage. The Complaint does exactly that. Compl. ¶¶ 100, 294.

**C.  The Complaint Alleges Discriminatory Exclusion and Deliberate Indifference**

The Complaint alleges that disabled unhoused persons are "qualified individuals with disabilities" within the meaning of § 504. Compl. ¶¶ 7, 123–125, 291, 295. It further alleges that the

TITLE

City's enforcement of ordinances and related practices "constitute discrimination on the basis of disability in programs and activities receiving federal financial assistance, "including:

- Enforcing ordinances without accommodations for disabled individuals;
- Denying meaningful access to public spaces and services;
- Destroying assistive devices and medical equipment;
- Releasing disabled individuals from custody without necessary supports;
- Failing to provide accessible alternatives.

Compl. ¶¶ 296–298.

To pursue compensatory damages under § 504, Plaintiffs must show deliberate indifference—that is, knowledge of the disability coupled with failure to act. *Duvall*, 260F.3d at 1138; *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). The Complaint plausibly alleges exactly that:

- Officers knew of Quinney's severe visual impairment: "It is obvious to anyone who encounters Mr. Quinney that he is severely vision impaired." Compl. ¶ 125.
- Officers nonetheless seized and destroyed his assistive device and released him without it, knowing he could not navigate safely. Compl. ¶¶ 131–135, 142.
- The resulting fall and injuries were foreseeable. Compl. ¶¶ 143–146.
- The City's policymakers "have failed to ensure Rehabilitation Act compliance in Police Department policies and practices." Compl. ¶ 299.

Under *Updike*, 870 F.3d at 951, and *Duvall*, 260 F.3d at 1139, such knowledge coupled with disregard of obvious accommodation needs constitutes deliberate indifference. These allegations suffice for compensatory damages under § 504.

**D. Defendants' Out-of-Circuit Authorities Are Inapposite**

Defendants rely on *Scheerer v. Potter*, 443 F.3d 916 (7th Cir. 2006), and *Doe v. BlueCross BlueShield of Tenn.*, 926 F.3d 235 (6th Cir. 2019), to recast § 504 as essentially an employment-only statute. But the Ninth Circuit has repeatedly recognized § 504 claims outside the employment

TITLE

context, including in public-program access, policing, and institutional settings. *Duvall*, 260 F.3d at 1135–36; *O'Guinn*, 502 F.3d at 1060.

Defendants' suggestion that § 504 does not reach disparate-impact theories is also beside the point. Plaintiffs plead intentional discrimination and deliberate indifference—the denial of reasonable accommodations to known disabled individuals, resulting in foreseeable injury. Compl. ¶¶ 123–146, 291–301. That is the core of § 504 liability under Ninth Circuit law.

At this stage, Plaintiffs' detailed factual allegations of disability-based exclusion from City enforcement-related programs and activities receiving federal funds easily suffice. The Tenth Cause of Action should not be dismissed.

## VI. THE NEGLIGENCE CLAIM (TWENTY-SECOND CAUSE OF ACTION) IS VIABLE AGAINST THE OFFICERS AND THE CITY

### A. Individual Officers Are Properly Sued for Common-Law Negligence

The Twenty-Second Cause of Action alleges that Defendants owed a duty of reasonable care to the General Class, Elderly Subclass, and Disabled Subclass, and breached that duty by, among other things:

- Seizing and destroying property without safeguards;
- Enforcing ordinances without regard to the health and safety of vulnerable individuals;
- Failing to preserve assistive devices;
- Releasing disabled individuals from custody without necessary supports;
- Conducting sweeps without adequate planning to avoid foreseeable harm;
- Failing to train officers to handle encounters with elderly and disabled individuals appropriately.

Compl. ¶¶ 394–396.

The Complaint further alleges that Quinney's fall and serious injuries were "directly and proximately caused" by Defendants' negligent failure to preserve his assistive device, and that other class members have suffered similar harms. Compl. ¶¶ 397–399.

TITLE

Nothing in *Miklosy v. Regents of Univ. of Cal*., 44 Cal. 4th 876, 899 (2008), or *Hernandez v. City of Stockton*, 90 Cal. App. 5th 1222, 1229 (2023)—which Defendants cite—eliminates common-law negligence liability for public employees. Those cases hold that a public entity's direct tort liability must be grounded in statute. Plaintiffs here assert a straightforward negligence claim against the individual officers; California recognizes such claims subject to statutory immunities. See *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202 (1991) (municipalities may be held liable for tortious acts of police officers committed in course of duties).

**B. Government Code § 815.2 Expressly Authorizes Vicarious Entity Liability for Employee Negligence**

The Complaint then alleges that "Plaintiffs are entitled to relief from the City of Fresno based on the vicarious liability principles set forth in California Government Code § 815.2." Compl. ¶¶ 199, 207, 309, 317, 325, 335, 342, 350, 376, 385, 392, 399–400.

Government Code § 815.2(a) provides:

> "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee."

Thus, once Plaintiffs plead a viable negligence claim against the officers (which they have), § 815.2 supplies the statutory hook for vicarious liability against the City—no separate "mandatory duty" statute is required for that vicarious theory. *Mary M.*, 54 Cal. 3d at 212–13 (confirming respondeat superior liability under § 815.2).

Defendants conflate § 815.2 (vicarious liability) with § 815.6 (mandatory duty) and argue that "a common-law tort cause of action generally does not exist on its own against a public entity" absent a specific statutory authorization. That argument attacks a direct-liability theory Plaintiffs have not asserted in the Twenty-Second Cause of Action; they instead invoke § 815.2 precisely as California law requires. Compl. ¶ 400.

The Complaint adequately alleges:

KGL
LAW OFFICE OF KEVIN G. LITTLE
Fresno | San Francisco

1. Duty: Officers owed a duty to exercise reasonable care in enforcement activities and to avoid creating unreasonable risks of harm, including by preserving assistive devices and planning sweeps to avoid foreseeable injury. Compl. ¶ 395.

2. Breach: Officers breached that duty in the enumerated ways. Compl. ¶ 396.

3. Causation: Quinney's fall and injuries were directly caused by the failure to preserve his assistive device. Compl. ¶¶ 143–144, 397.

4. Damages: Quinney suffered serious physical injuries requiring hospitalization and rehabilitation, with ongoing limitations. Compl. ¶¶ 145–146, 398–399.

These detailed factual allegations easily satisfy the minimal pleading standard for negligence. See *Lawson v. Superior Court*, 180 Cal. App. 4th 1372 (2010) (elements of negligence).

**C. Daniels v. Williams Does Not Bar the State-Law Negligence Claim**

Defendants cite *Daniels v. Williams*, 474 U.S. 327, 328 (1986), for the proposition that negligence does not implicate federal due process. But Plaintiffs are not relying on negligence to support a federal due-process theory in the Twenty-Second Cause of Action; that claim is pled purely as state-law negligence. Compl. ¶¶ 393–399. *Daniels* is therefore irrelevant to whether Plaintiffs have stated a claim under California tort law.

The negligence claim, and the City's derivative liability under § 815.2, should stand.

**VII.    THE MOTION TO STRIKE PUNITIVE DAMAGES AND ATTORNEYS' FEES SHOULD BE DENIED OR NARROWLY GRANTED**

**A. Punitive Damages Are Sought Only Against Individual Officers**

The Complaint's Prayer explicitly requests that the Court "Award punitive damages to Plaintiffs TwoHands and Quinney against the individual Defendants for their individual claims." Prayer ¶ 8. Plaintiffs do not ask for punitive damages against the City.

Government Code § 818, which bars punitive damages against public entities, and *Kizer v. County of San Mateo*, 53 Cal. 3d 139 (1991), thus have no application to Plaintiffs' actual prayer.

Defendants identify paragraphs in various causes of action where Plaintiffs allege entitlement to punitive damages and fees "pursuant to Civil Code § 52.1" and note that those

TITLE

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco

paragraphs reference the City via § 815.2. Compl. ¶¶ 199, 207, 309, 317, 325, 335, 342, 350. Read in context with the Prayer, those paragraphs preserve punitive damages against individual officers and vicarious liability against the City for compensatory relief only.

If the Court finds any ambiguity, the proper remedy is a short amendment clarifying that punitive damages are not sought from the City, not wholesale striking of punitive-damage allegations that are plainly proper as to the individual defendants under § 1983 and Civil Code § 52.1. Compl. ¶¶ 170, 187, 199, 207.

**B. Qualified Immunity Does Not Apply to ADA or Rehabilitation Act Claims**

To the extent Defendants suggest qualified immunity bars relief, that defense is inapplicable. Qualified immunity shields government officials from personal liability for constitutional claims under § 1983, but the ADA and Rehabilitation Act permit suit only against the public entity, not against officers in their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Courts uniformly hold that qualified immunity does not apply to ADA and Rehabilitation Act claims. *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009). Thus, Defendants' qualified immunity references are misplaced.

**C. Attorneys' Fees Allegations Are Appropriate at the Pleading Stage**

Defendants ask the Court to strike fee requests in connection with the Seventeenth, Nineteenth, and Twenty-First Causes of Action, arguing that Government Code § 815.6, Government Code § 11135, and Health & Safety Code § 101025 do not themselves contain fee provisions. But the Complaint's Prayer seeks attorneys' fees under a comprehensive set of fee-shifting statutes, including:

- 42 U.S.C. § 1988 (§ 1983 and federal civil rights claims);
- 42 U.S.C. § 12205 (ADA);
- 29 U.S.C. § 794a (Rehabilitation Act);
- California Civil Code §§ 52.1 and 54.3 (Bane Act and Disabled Persons Act);
- "And other applicable law."

TITLE

KGL

LAW OFFICE OF KEVIN G. LITTLE

Fresno | San Francisco

Prayer ¶ 12.

Given the overlap between the federal and state causes of action, it is entirely appropriate to plead a general entitlement to fees and to refine the specific statutory bases later in the litigation.

Moreover, California Code of Civil Procedure § 1021.5 provides a potential independent basis for fee-shifting on state-law causes of action that enforce important public rights—which is the gravamen of this systemic challenge to Fresno's homelessness policies affecting thousands of vulnerable individuals. Compl. ¶¶ 1–2, 15–17, 23–38, 428–435. The failure to cite § 1021.5 by number in the body of individual causes of action is not a pleading defect that warrants striking fee allegations under Rule 12(f).

At most, if the Court concludes that certain fee requests are tied too specifically to statutes that lack express fee provisions, it should grant leave to amend that wording, not strike fees entirely.

## VIII.    CONCLUSION

The Complaint's detailed factual allegations, read with the deference required on a Rule12 (b)(6) motion, state plausible claims under Title II of the ADA, § 504 of the Rehabilitation Act, and California negligence law (with vicarious liability under Government Code § 815.2). Compl. ¶¶ 6–8, 23–39, 101–121, 122–151, 274–301, 291–301, 393–400, Prayer ¶¶ 7–12.

Binding Ninth Circuit precedent—*Sheehan, Hyer, Duvall, Lovell, Updike, Ferguson, Vinson, Sharer*, and *Mary M.*—squarely supports Plaintiffs' claims. Defendants' motion to dismiss the Ninth, Tenth, and Twenty-Second Causes of Action and to strike punitive damages and attorneys' fees should be denied in its entirety, or at most granted with leave to amend solely to clarify that punitive damages are not sought from the City of Fresno.

Dated:                                                        LAW OFFICE OF KEVIN G. LITTLE

                                                              */s/ Kevin G. Little*
                                                              Kevin G. Little
                                                              Attorneys for Plaintiffs Wickey TwoHands and
                                                              Joseph Quinney, for themselves and those
                                                              similarly situated

TITLE

**KGL**
**LAW OFFICE OF KEVIN G. LITTLE**
Fresno | San Francisco